**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-01443-NYW

THE ESTATE OF GABRIELLE MEDINA, *by and through its personal representative*, *Tim Medina*,

      Plaintiff,

v.

JENNIFER ROSS SAMUELS,
TINA CULLYFORD,
ELLE HEEG MILLER,
ALEX HERBERT,
TIFFANY NEARY,
KIMBERLY RETALLACK,
AMY DIXON,
STEPHANIE SCHRAG,
RANDOLPH MAUL,
LETO QUARLES,
JILL KEEGAN, and
WARDEN RYAN LONG,

      Defendants.

---

**ORDER ON MOTIONS TO DISMISS**

---

Magistrate Judge Nina Y. Wang

    This matter comes before the court on the following three motions:

    (1)    Defendant Leto Quarles, M.D.'s ("Defendant Quarles" or "Dr. Quarles") Motion to Dismiss Plaintiff's Complaint (ECF 1) Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Quarles Motion to Dismiss"), filed August 17, 2020, [#36];

    (2)    Defendant Elle Heeg Miller's ("Defendant Miller") Motion to Dismiss Complaint [ECF 1] (the "Miller Motion to Dismiss"), filed August 24, 2020, [#42]; and

    (3)    Defendants Tina Cullyford, Alex Herbert, Tiffany Neary, Amy Dixon, Stephanie Schrag, Randolph Maul, Jill Keegan, and Warden Ryan Long's (collectively, "CDOC

Defendants") Motion to Dismiss the Claims Against Tina Cullyford, Alex Herbert, Tiffany Neary, Amy Dixon, Stephanie Schrag, Randolph Maul, Jill Keegan, and Warden Ryan Long in Plaintiff's Complaint and Jury Demand (DOC. 1) and/or, Alternatively, Motion for Summary Judgment (the "CDOC Motion to Dismiss"), filed September 4, 2020, [#58]. The undersigned considers the Motions pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes.  [#55].  The court concludes that oral argument will not materially assist in the resolution of this matter.  Accordingly, upon review of the Motions and associated briefing, the applicable case law, and being otherwise fully advised in their premises, the court **GRANTS IN PART and DENIES IN PART** the Quarles Motion to Dismiss, **GRANTS** the Miller Motion to Dismiss, and **GRANTS IN PART and DENIES IN PART** the CDOC Motion to Dismiss.

**BACKGROUND**

The court draws the following facts from the Complaint and presumes they are true for purposes of the instant Motions.  On or about March 10, 2017, Gabrielle Medina's ("Ms. Medina") doctor diagnosed Ms. Medina with stage IB1 cervical cancer.  [#1 at ¶ 39].  Because Ms. Medina was pregnant at the time, she could not receive cancer treatment.  [*Id.* at ¶ 40].  Ms. Medina was arrested and placed in custody for violations of her parole and misdemeanor offenses on or about January 10, 2018.  [*Id.* at ¶ 41].  Between January and April 2018, medical providers evaluated Ms. Medina's cervical cancer, which remained at stage IB, and recommended chemotherapy, radiation, and a potential hysterectomy.  [*Id.* at ¶¶ 42-45].  Ms. Medina pleaded guilty and was sentenced to the Colorado Department of Corrections ("CDOC") on or about May 8, 2018.  [*Id.* at ¶ 46].

Ms. Medina arrived at Denver Women's Correction Facility ("DWCF") on or about May 9, 2018.  [*Id.* at ¶ 47].  About a week later, Defendant Miller, a nurse at DWCF, conducted Ms.

Medina's intake physical examination, at which Ms. Medina disclosed her cervical cancer diagnosis, her need for radiation, and her issues with irregular vaginal bleeding. [*Id.* at ¶¶ 7, 48]. Ms. Medina and others similarly disclosed Ms. Medina's cancer diagnosis to Defendant Jennifer Samuels, a nurse at DWCF. [*Id.* at ¶¶ 51, 54-55]. Neither Defendant Miller nor Defendant Samuels provided treatment or referred Ms. Medina to treatment. *See* [*id.* at ¶¶ 50, 53, 57].

On or about June 18, 2018, Ms. Medina submitted a kite to the Health Services Administration requesting an update on when she would resume cancer treatment given that she had not received treatment in approximately two months and her symptoms were getting worse. [*Id.* at ¶ 59]. On or about July 9, 2018, Ms. Medina met with Defendant Samuels, who informed Ms. Medina that Ms. Medina could either forego treatment or request an appointment with Rocky Mountain Cancer Centers ("RMCC"). [*Id.* at ¶ 60]. Although Ms. Medina requested an appointment with RMCC, Defendant Samuels did not provide treatment or refer Ms. Medina for treatment. [*Id.* at ¶¶ 61, 64]. On or August 20, 2018, Ms. Medina complained to Defendant Samuels of worsening symptoms, including "heavy vaginal bleeding, low back pain, and extreme pain," yet Defendant Samuels did not provide treatment or refer Ms. Medina to treatment. [*Id.* at ¶¶ 65-66]. Then, on September 16, 2018, Ms. Medina submitted another kite to Health Services Administration inquiring about cancer treatment, which Defendant Samuels allegedly reviewed, but Ms. Medina did not receive treatment or a referral to treatment even though she complained to other CDOC personnel. [*Id.* at ¶¶ 68-69].

On or about October 17, 2018, Ms. Medina received an evaluation for "irregular bleeding" at Denver Health OB/GYN. [*Id.* at ¶ 71]. The doctor observed that Ms. Medina's cervical cancer had progressed to stage IIB but did not provide treatment to Ms. Medina. [*Id.* at ¶¶ 72-73]. Throughout October 2018, Ms. Medina complained of heavy vaginal bleeding, causing her to faint

and have a seizure, for which Defendant Alex Herbert, a nurse at DWCF, prescribed "menstrual pads and education about sanitary [sic] and a healthy diet." [*Id.* at ¶¶ 74-76, 78]. Ms. Medina also complained of increased vaginal bleeding and hip pain to Defendant Samuels who attributed the vaginal bleeding and hip pain to Ms. Medina's cervical cancer progressing to stage IIB2 and prescribed an anti-depressant. [*Id.* at ¶ 79]. Defendants Samuels and Herbert did not provide any additional treatment or refer Ms. Medina for additional treatment. [*Id.* at ¶¶ 76-78, 80].

On or about November 13 and 21, 2018, Ms. Medina presented to RMCC for evaluation and treatment recommendations, with doctors recommending chemotherapy and radiation to begin within a few weeks. [*Id.* at ¶¶ 82-83]. A few days later, Ms. Medina was taken to the emergency room after presenting to the Health Services Clinic complaining of heavy vaginal bleeding; Ms. Medina received a blood transfusion and remained in the emergency room for 18 hours. [*Id.* at ¶¶ 85-86]. Upon returning to DWCF, Ms. Medina continued to experience heavy vaginal bleeding, of which Defendants Samuels and Herbert were aware, resulting in Ms. Medina losing consciousness and returning to the emergency room where she received another blood transfusion. [*Id.* at ¶¶ 87-90, 94].

On or about December 5 and 6, 2018, Ms. Medina began chemotherapy and radiation treatment. [*Id.* at ¶ 92]. Ms. Medina completed her first round of chemotherapy and radiation in about January and February 2019, respectively, but her treatment providers recommended additional chemotherapy and radiation. [*Id.* at ¶¶ 97-100]. About February 18, 2019, Ms. Medina discussed her continued need for cancer treatment with Defendant Samuels, yet Defendant Samuels did not refer Ms. Medina for continued treatment and instead scheduled Ms. Medina for another visit in the Health Services Clinic for April 2019. [*Id.* at ¶¶ 102-03]. Ms. Medina continued to request cancer treatment and, on or about March 21, 2019, Defendant Tiffany Neary,

a nurse at DWCF, reviewed Ms. Medina's medical records but did not refer Ms. Medina for treatment. [*Id.* at ¶¶ 104-07]. Ms. Medina attended her follow-up appointment with Defendant Samuels in April 2019 and complained of worsening symptoms, but Defendant Samuels did not treat or refer Ms. Medina for treatment. [*Id.* at ¶¶ 108-10].

About this same time, Ms. Medina's criminal attorney sought a reconsideration of Ms. Medina's sentence given her ailments and, although the judge granted the motion, the Parole Board denied Ms. Medina's release. [*Id.* at ¶¶ 95, 111-13]. So, on May 25, 2019, Ms. Medina requested that Defendant Kimberly Retallack, a nurse at DWCF, make an appointment with RMCC to continue cancer treatments, yet Defendant Retallack did not take any action. [*id.* at ¶¶ 114-16]. Given Defendants Samuels and Retallack's (among others) failure to provide help, Ms. Medina decided to sit and wait at the Health Services Clinic until someone would assist her. [*Id.* at ¶ 118]. Between June 14 and 21, 2019, Ms. Medina repeatedly complained to Defendants Samuels, Neary, and Retallack about worsening vaginal bleeding and related symptoms, but none provided treatment or referred Ms. Medina for treatment. *See* [*id.* at ¶¶ 119-27].

In about July 2019, Ms. Medina received an evaluation from a gynecologist; scans from this visit, reviewed by Defendant Samuels, revealed a new mass. [*Id.* at ¶¶ 128-30]. Between July 5 and 17, 2019, Ms. Medina repeatedly complained of worsening symptoms, but neither Defendant Samuels nor Defendant Neary provided treatment or referred Ms. Medina for treatment, and Ms. Medina ultimately received a blood transfusion in the emergency room. *See* [*id.* at ¶¶ 130-35]. Defendant Neary and Defendant Amy Dixon, a Health Services Administration nursing supervisor, allegedly reviewed Ms. Medina's emergency room treatment notes that revealed "a large pelvic mass indicative that her cancer had spread further," but did not provided treatment or refer Ms. Medina for treatment. [*Id.* at ¶¶ 135-36].

Ms. Medina's physical condition continued to deteriorate, resulting in her admission to the emergency room on July 22, 2019, where she received another blood transfusion as well as a procedure to "preserve kidney function," though she did not receive cancer treatment. [*Id.* at ¶¶ 138-39, 143-44]. At this point, Ms. Medina's cancer had spread "all over her body" and was terminal. [*Id.* at ¶ 140]. On July 27, 2019, Ms. Medina was transferred to Swedish Hospital where she received chemotherapy and radiation treatment—the first such treatments since February 2019; doctors gave Ms. Medina 6-18 months to live. [*Id.* at ¶ 142].

Ms. Medina was discharged from Swedish Hospital and transferred to the infirmary of the Denver Reception and Diagnostic Center ("DRDC") on or about August 16, 2019. [*Id.* at ¶ 145]. Ms. Medina's health had noticeably deteriorated, and she was in constant pain and discomfort and required assistance ambulating and with personal hygiene. [*Id.* at ¶¶ 146-48, 150]. Despite this, Defendant Quarles allegedly discontinued two of Ms. Medina's pain medications, and Defendants Maul and Keegan had knowledge of this decision and the pain Ms. Medina suffered. *See* [*id.* at ¶¶ 151-53]. On or about August 21, 2019, Ms. Medina presented to RMCC but was later transferred to the emergency room for uncontrolled pain, prompting Defendant Keegan to increase Ms. Medina's pain medication at doctor's orders. *See* [*id.* at ¶¶ 154-56]. And despite plans to receive chemotherapy at the DRDC, Defendants Quarles, Maul, and Keegan allegedly refused and/or failed to provide such treatment. *See* [*id.* at ¶¶ 157-62]. Ms. Medina's health deteriorated to the point that she required further hospitalization until the Parole Board approved her release on or about October 1, 2019. *See* [*id.* at ¶¶ 163-69]. Ms. Medina passed away on October 13, 2019. [*Id.* at ¶ 170].

Believing Defendants violated Ms. Medina's constitutional rights, Plaintiff Estate of Gabrielle Medina ("Plaintiff" or the "Estate") initiated this civil action on May 20, 2020. [#1].

The Estate asserts two claims pursuant to 42 U.S.C. § 1983: (1) deliberate indifference to Ms. Medina's serious medical needs in violation of the Eight and Fourteenth Amendments[1] against Defendants Miller, Samuels, Herbert, Neary, Retallack, Dixon, Schrag, Maul, Quarles, and Keegan ("Claim 1") and (2) a deliberate indifference claim based on supervisory liability against Defendants Cullyford, Schrag, Dixon, Quarles, Maul, and Long (collectively, the "Supervisory Defendants") ("Claim 2"). *See generally* [#1].  The Estate sues each Defendant in her or his individual capacity.  [*Id.*].

Presently before the court are the instant Motions to Dismiss. *See* [#36; #42; #58].  Plaintiff has since responded in opposition, *see* [#79; #80], and Defendant Quarles, Defendant Miller, and the CDOC Defendants have since replied, *see* [#83; #84; #85].  Because the Motions are ripe for disposition, I consider each below.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248-49 (10th Cir. 2020) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (internal quotation marks omitted).  In making this determination, the

---

[1] It appears that the Estate's claims arise under the Eighth Amendment given that Ms. Medina was a convicted prisoner, rather than a pretrial detainee protected under the Fourteenth Amendment, but the court applies the same analysis under either Amendment.  *See Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020) ("In evaluating such Fourteenth Amendment claims, we apply an analysis identical to that applied in Eighth Amendment cases."   (internal quotation marks omitted)).  Indeed, the Complaint makes clear that the claims arise under the Eighth Amendment. [#1 at ¶ 1].  Thus, the court considers the Estate's claims under the Eighth Amendment only, as it does not appear that the Estate asserts a stand alone substantive due process claim under the Fourteenth Amendment. *See* [#36 at 2 (noting upon conferral, there was no objection to the argument pertaining to the Fourteenth Amendment); #79].

"court accepts as true all well-pleaded factual allegations in [the] complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018). The court's role is to consider the sufficiency of the pleading, not weigh the evidence the parties may rely on at summary judgment. *Evans v. Diamond*, 957 F.3d 1098, 1100 (10th Cir. 2020).

In some instances, courts may consider materials beyond the complaint if the documents are central to the plaintiff's claims, referred to in the complaint, and the parties do not dispute their authenticity. *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). Each Motion to Dismiss, at some point, relies on Ms. Medina's medical records. As previously ordered, the court does not find it appropriate to consider materials outside the pleading on the instant Motions or appropriate to convert the instant Motions to Dismiss to ones for summary judgment. *See* [#81]. While the Complaint generally references Ms. Medina's medical records, and those records will undoubtedly be central to the claims at issue, "they are not the kind of documents [courts] have ordinarily allowed to be entertained at the motion to dismiss stage." *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014); *cf.* Fed. R. Evid. 702.

## ANALYSIS

### I.     Claim 1 – Deliberate Indifference

The Eighth Amendment's proscription on cruel and unusual punishment extends to the conditions under which an inmate is confined and requires prison officials to provide adequate medical care. *Contreras on behalf of A.L. v. Dona Ana Cty. Bd. of Cty. Commissioners*, 965 F.3d 1114, 1116-17 (10th Cir. 2020) (Tymkovich, J., concurring). For instance, "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Walker*, 947 F.3d at 1249 (brackets

omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  To prove deliberate indifference under Claims 1 and 2, the Estate must satisfy both an objective component and a subjective component.  *Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018).  That is, it must show that Defendants were "subjectively aware" of an objectively serious medical need and "recklessly disregarded that risk." *Wilson v. Falk*, 877 F.3d 1204, 1209 (10th Cir. 2017) (brackets and internal quotation marks omitted).

## A.     Objective Component

"The objective component of deliberate indifference is met if the 'harm suffered rises to a level "sufficiently serious" to be cognizable under the Cruel and Unusual Punishment Clause.'" *Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019) (quoting *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005)).  If a plaintiff alleges a denial of medical care, she must "produce objective evidence that the deprivation at issue was in fact sufficiently serious." *Estate of Booker v. Gomez*, 745 F.3d 405, 430 (10th Cir. 2014) (internal quotation marks omitted).  "'A medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018) (quoting *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)).  If "the claim involves a delay in treatment, [a plaintiff] ha[s] to show that the delay resulted in substantial harm." *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018) (internal quotation marks omitted).  A showing of "lifelong handicap, permanent loss, or considerable pain" may satisfy the substantial harm requirement.  *McCowan v. Morales*, 945 F.3d 1276, 1291 (10th Cir. 2019) (internal quotation marks omitted).

Defendant Quarles, Defendant Miller, and the CDOC Defendants each appear to concede that the Estate has satisfied the objective component of a deliberate indifference claim for purposes

of the instant Motions to Dismiss, and the court agrees. The Complaint provides thorough factual allegations demonstrating that Ms. Medina's cervical cancer was an objectively serious medical need and the delay in receiving treatment caused substantial harm. *Compare* [#1] *with Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) ("There is no doubt that . . . cancer meets the objective criteria of an Eighth Amendment claim."); *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (concluding the delay in medical treatment caused substantial harm where the "severe pain and fear of death lasted for several hours, during which Plaintiff was provided with neither the medical treatment that could have reduced his pain nor the medical diagnosis that could have removed his fear of death.").

### B.    Subjective Component

"To satisfy the subjective component, the plaintiff must show that the defendant knew that the plaintiff faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1112 (10th Cir. 2016) (internal quotation marks omitted). "The subjective prong is met if prison officials intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed." *Redmond v. Crowther*, 882 F.3d 927, 940 (10th Cir. 2018) (brackets and internal quotation marks omitted). Further, a plaintiff may satisfy the subjective component if the need for treatment is so obvious that any delay or denial equates to recklessness; mere negligence, even if constituting medical malpractice, is not enough. *See Self v. Crum*, 439 F.3d 1227, 1231-33 (10th Cir. 2006). Nor do prison officials "act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants." *Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018). Ultimately, to prove a culpable mindset, a plaintiff "must show a prison official knows of and disregards an excessive risk to inmate health or safety; the official

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Walker*, 947 F.3d at 1249 (internal quotation marks omitted).

### i.   Defendant Quarles

Defendant Quarles moves to dismiss Claim 1, arguing that the Estate merely alleges a disagreement with Defendant Quarles's treatment of Ms. Medina as opposed to a cognizable claim for deliberate indifference.  *See* [#36 at 4-8; #83 at 2-6].[2]  The Estate argues that it pleads a plausible claim against Defendant Quarles because it alleges Defendant Quarles discontinued Ms. Medina's prescribed pain medications despite Ms. Medina's obvious pain which obstructed Ms. Medina's ability to receive her prescribed chemotherapy.  *See* [#79 at 5-6, 8-11].  I consider the Parties' arguments below.

The Complaint alleges that Defendant Quarles was a physician at the DRDC who was responsible for supervising nurses and providing adequate medical care to inmates at the DRDC, including Ms. Medina.  [#1 at ¶¶ 13, 145].  The Complaint continues that on or about August 16, 2019, Ms. Medina was transferred from Swedish Hospital to the DRDC, where her deteriorating health and extreme pain were obvious to Defendant Quarles.  [*Id.* at ¶ 147].  Despite this, Defendant Quarles allegedly discontinued two of Ms. Medina's prescribed pain medications, causing Ms. Medina to suffer extreme pain and discomfort, and did nothing to abate Ms. Medina's pain and discomfort.  [*Id.* at ¶¶ 149-51].  The Complaint further avers that Ms. Medina's pain became so great that she was treated at the emergency room on or about August 21, 2019, that her uncontrolled pain obstructed her ability to receive chemotherapy on August 22, 2019, and that

---

[2] Defendant Quarles also moves to dismiss any Fourteenth Amendment claim asserted against her because the Estate's claims properly arise under the Eighth Amendment.  *See* [#36 at 8; #83 at 6]. As the court noted earlier, this court analyzes the claims against Defendant Quarles under the Eighth Amendment only.

Defendant Quarles knowingly did not provide Ms. Medina's prescribed chemotherapy treatment at DRDC, resulting in Ms. Medina being hospitalized again in September 2019. *See* [*id.* at ¶¶ 154, 157-60, 162, 165-68].

The court concludes that these allegations are sufficient to establish Defendant Quarles's culpable state of mind. To be sure, an inmate does not have a constitutional right to a particular course of treatment or narcotic pain medication. *See Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (particular course of treatment); *Henderson v. Fisher*, 767 F. App'x 670, 674 (10th Cir. 2019) (narcotic pain medication). Nor is a mere disagreement with treatment enough to demonstrate a medical provider's deliberate indifference, even if the rendered treatment is subpar. *See Lamb*, 899 F.3d at 1162. But the allegations here go beyond a desire for a particular treatment or a disagreement with treatment. Rather, the Estate alleges Ms. Medina's pain and discomfort were obvious to Defendant Quarles, who not only discontinued two pain medications but then did nothing to abate Ms. Medina's continued complaints of pain and discomfort.[3] *See Estate of Booker*, 745 F.3d at 431-32 (explaining that a defendant can be deliberately indifferent when the plaintiff's symptoms reveal an obvious need for treatment, especially when the defendant's training should alert her to the need for treatment); *see also Thomas v. Bruce*, 125 F. App'x 964, 968 (10th Cir. 2005) ("Beyond receiving blood tests confirming that he has Hepatitis C and suggesting abnormal enzyme levels possibly indicative of liver disease, we can find no basis in the record to support the district court's finding that Thomas 'is receiving ongoing care for his medical condition.'"). Moreover, the Estate alleges Defendant Quarles knowingly did not provide Ms. Medina with her prescribed chemotherapy treatment—either by not abating Ms. Medina's pain or

---

[3] Defendant Quarles tries to rebut these assertions by attaching a medical record to her Reply that purportedly establishes that Ms. Medina was still receiving narcotic pain medication. [#83-1]. But again, this medical record is not appropriate for the court's consideration on the instant Motions to Dismiss.

not providing chemotherapy.  *See Redmond*, 882 F.3d at 940 ("The subjective prong is met if prison officials intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed."  (brackets and internal quotation marks omitted)).

Based on the foregoing, I conclude that the Estate pleads a plausible deliberate indifference claim against Defendant Quarles.  Accordingly, I **DENY** the Quarles Motion to Dismiss as to Claim 1.

### ii.        Defendant Miller

Defendant Miller moves to dismiss Claim 1 because the Estate fails to plead factual allegations, as opposed to conclusory assertions, that Defendant Miller was deliberately indifferent to Ms. Medina's cervical cancer.[4]  [#42 at 6-7; #84 at 6-8].  This is because the Complaint contains only one instance where Defendant Miller had any engagement with Ms. Medina, which is insufficient to demonstrate Defendant Miller's personal participation in the alleged constitutional violation or her deliberate indifference to Ms. Medina's cervical cancer.  *See* [#42 at 7-9, 10-13; #84 at 7-9].  I respectfully agree.

The Complaint contains only one factual allegation regarding Defendant Miller's conduct:

> On May 16, 2018, Ms. Medina was seen by [Defendant] Miller . . . for an intake physical exam. Ms. Medina told [Defendant Miller] that [Ms. Medina] had been diagnosed with Stage 1B cervical cancer at San Luis Medical Center and that she needed radiation. Ms. Medina also described irregular vaginal bleeding throughout the month due to cancer.

[#1 at ¶ 48].  The Complaint contains no other factual allegations regarding Defendant Miller, other than to note in conclusory fashion that Defendant Miller (in addition to others) did not

---

[4] Defendant Miller makes arguments on behalf of other Defendants not party to her Motion to Dismiss, *see* [#42 at 5-7], but Defendant Miller lacks standing to assert such arguments.  Thus, the court limits its discussion of Defendant Miller's Motion to the allegations concerning Defendant Miller only.

provide treatment or refer Ms. Medina to treatment after this lone encounter.  *See, e.g.*, [*id.* at ¶¶ 49-50, 199-201].

The Estate argues that these allegations are sufficient to establish both Defendant Miller's personal participation and culpable state of mind, because Defendant Miller should have, but did not, provide treatment to Ms. Medina or refer Ms. Medina to a medical provider that could provide treatment.  *See* [#80 at 11-12].  Respectfully, the court disagrees.

The Complaint alleges only that Defendant Miller conducted an intake physical examination of Ms. Medina, at which Ms. Medina revealed her cervical cancer diagnosis, the need for radiation, and irregular vaginal bleeding.  [#1 at ¶ 49].  While the court agrees that Ms. Medina's cervical cancer and delay in treatment satisfy the objective component of a deliberate indifference claim, there are no allegations establishing Defendant Miller's culpable state of mind. Indeed, the Complaint alleges that a medical provider at DWCF must make a referral to RMCC before inmates with cancer can receive appropriate treatment, *see* [*id.* at ¶¶ 27-29], but there are no allegations that Defendant Miller has the authority to make such a referral or whether she affirmatively refused to do so.  *See Oxendine v. Kaplan*, 241 F.3d 1272, 1279 (10th Cir. 2001) (explaining that deliberate indifference may arise where the medical provide affirmatively denies treatment or access to a medical personnel that can provide treatment); *but cf. Self*, 439 F.3d at 1232 (explaining that a medical provider is not deliberately indifferent when she exercises her medical judgment as to whether to consult a specialist or perform more testing).  Thus, any failure to do so appears negligent at best, which does not satisfy the subjective component of a deliberate indifference claim.  *See Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) ("Deliberate indifference requires more than a showing of simple or heightened negligence.").

14

Further, it is unclear what treatment Defendant Miller should have or could have provided at the intake physical examination given the Estate's persistent assertions that the medical staff at DWCF are not qualified to provide cancer treatment and does not have the requisite equipment to do so. *See generally* [#1 at ¶¶ 27-28, 30-34, 36-37, 49-50]. Moreover, most allegations concerning Ms. Medina's deteriorating health occurred <u>after</u> her intake physical examination with Defendant Miller, and there are no allegations suggesting Ms. Medina presented to Defendant Miller complaining of her various maladies or that Defendant Miller was aware of these maladies and still refused to provide treatment. *See Mata*, 427 F.3d at 755-58 (finding that the defendant was deliberately indifferent where the defendant utterly refused to evaluate the plaintiff's complaints of severe chest pain, which caused unnecessary pain or worsening of the plaintiff's condition). Thus, I **GRANT** Defendant Miller's Motion to Dismiss and **DISMISS without prejudice** Claim 1 as to Defendant Miller.[5]

### iii.    The CDOC Defendants

The CDOC Defendants move to dismiss Claim 1 because they were not deliberately indifferent to Ms. Medina's medical needs, but rather Ms. Medina routinely refused treatment. [#58 at 2-13]. They further contend that they provided Ms. Medina with adequate medical care,

---

[5] Defendant Miller requests that the court dismiss the claim against her with prejudice, but she does not address the legal standard applicable to dismissals with prejudice. *See* [#42; #84]. Moreover, dismissal with prejudice is appropriate only when it is patently obvious the plaintiff cannot plead a plausible claim for relief and thus amendment would be futile. *See Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (explaining that dismissal without prejudice to allow amendment of the complaint is appropriate where the plaintiff is "close to stating a claim but [is] missing some element that may not have occurred to him" (internal quotation marks omitted)); *cf. Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) ("dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile" (internal quotation marks omitted)). While the Estate offers scant allegations regarding Defendant Miller, it is not patently obvious it could not cure these pleading deficiencies, and thus dismissal without prejudice appears more appropriate.

and any disagreement with the prescribed treatment does not amount to deliberate indifference. *See* [*id.* at 13-26; #85 at 4-9].

As explained, the CDOC Defendants rely exclusively on material outside the pleading that the court will not consider on the instant Motion to Dismiss. Thus, the court's inquiry below focuses exclusively on the four corners of the Complaint and whether the allegations therein plead plausible claims against the CDOC Defendants. *See Evans*, 957 F.3d at 1100 ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." (ellipsis and internal quotation marks omitted).

### Defendant Dixon

The Complaint alleges Defendant Dixon is a Nursing Supervisor, who responsible for managing the nursing services at DWCF and DRDC and providing adequate medical treatment to inmates. [#1 at ¶ 16]. On or about July 18, 2019, Defendant Dixon allegedly reviewed Ms. Medina's emergency room treatment notes that revealed Ms. Medina's cancer was spreading but did not treat Ms. Medina or refer Ms. Medina to treatment. [*Id.* at ¶¶ 135-36]. The Estate continues that Defendant Dixon was aware of Ms. Medina's lack of treatment yet did nothing to assist Ms. Medina. *See* [*id.* at ¶ 180].

The CDOC Defendants argue that the Estate fails to allege a deliberate indifference claim against Defendant Dixon because Defendant Dixon treated Ms. Medina's cancer only once and did not have the authority to refer Ms. Medina to an oncologist. *See* [#58 at 13-15; #85 at 4-5]. I respectfully agree that the Estate fails to plead a plausible deliberate indifference claim against Defendant Dixon.

Assuming Defendant Dixon was aware of the spread of Ms. Medina's cancer, the Complaint persistently alleges that the DWCF does not have the staff or the resources to treat inmates with cancer and so it is unclear what treatment Defendant Dixon could have provided Ms. Medina.   Nor does the Complaint allege that Ms. Medina presented to Defendant Dixon complaining of worsening pain and discomfort and Defendant Dixon failed to abate those symptoms.   And to the extent the Estate suggests Defendant Dixon was deliberately indifferent because she did not refer Ms. Medina to an oncologist, the Complaint contains no factual allegations that Defendant Dixon had such authority (and it is not clear based on the allegation that Defendant Dixon is a supervisor), or intentionally refused to refer Ms. Medina to an oncologist, or otherwise interfered with prescribed treatment.   *See Oxendine*, 241 F.3d at 1277-79 (finding the defendant deliberately indifferent where the plaintiff alleged he persistently informed the defendant about his worsening condition and requested a referral to a specialist, but the defendant only referred the plaintiff to a specialist until it was too late); *cf. Ankeney v. Zavaras*, 524 F. App'x 454, 457 (10th Cir. 2013) (concluding the plaintiff failed to satisfy the subjective component where the plaintiff provided only conclusory assertions that the defendants did not refer the plaintiff to a specialist and interfered with prescribed treatment).   Thus, I **GRANT** the Motion to Dismiss in this regard and **DISMISS without prejudice** Claim 1 as to Defendant Dixon.   *See supra* n.6.

## Defendant Herbert

The Estate alleges Defendant Herbert was a nurse at DWCF, who was responsible for providing adequate medical care to inmates, including Ms. Medina.   [#1 at ¶ 9].   The Estate indicates that Ms. Medina presented to Defendant Herbert on or about October 23, 2018 and stated she suffered a seizure and was experiencing heavy vaginal bleeding due to her cancer, and Defendant Herbert responded by prescribing only "menstrual pads and education about sanitary

[sic] and a healthy diet."  [*Id.* at ¶ 76].  Ms. Medina next encountered Defendant Herbert on or about December 1, 2018, when she complained of excessive vaginal bleeding and when Defendant Herbert responded to Ms. Medina's cell because Ms. Medina lost consciousness from excessive vaginal bleeding.  [*Id.* at ¶¶ 88-89].  Ms. Medina received a blood transfusion in the emergency room the following day but did not receive any cancer treatment.  [*Id.* at ¶ 90]. The Estate also alleges Defendant Herbert was aware that Ms. Medina required three courses of cancer treatment. [*Id.* at ¶ 93].

The CDOC Defendants argue that the Estate fails to establish Defendant Herbert was deliberately indifferent to Ms. Medina's serious medical needs.  *See* [#58 at 15-16; #85 at 4-6]. They argue that the Estate alleges, at most, a medical malpractice claim, which is insufficient for purposes of the subjective component of an Eighth Amendment deliberate indifference claim.  *See* [#58 at 15-16; #85 at 4-6].  The court agrees with the CDOC Defendants.

Although the Estate pleads that Ms. Medina complained of a seizure and excessive vaginal bleeding to Defendant Herbert, who prescribed only menstrual pads and education about sanitation and a healthy diet, the court is not convinced this establishes a conscious disregard of Ms. Medina's serious medical needs.  Indeed, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has "consistently held that prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."  *Lamb*, 899 F.3d at 1162.  Nor does the Estate allege that Defendant Herbert actually denied or delayed treatment on December 1, as the Complaint states that Ms. Medina received a blood transfusion the next day in the emergency room and there are no allegations suggesting Ms. Medina suffered needlessly because of Defendant Herbert's conduct.  Relatedly, the Estate does not allege <u>facts</u>, aside from conclusory assertions, that Defendant Herbert intentionally interfered with Ms.

Medina's cancer treatments or that Defendant Herbert could have, but declined to, take further action to assist Ms. Medina.

At most, taking the <u>factual</u> allegations as true and drawing all inferences in favor of the Estate, this court concludes that Plaintiff pleads only that Defendant Herbert provided subpar medical treatment and/or was medically negligent in treating Ms. Medina, but neither is enough to demonstrate Defendant Herbert consciously disregarded Ms. Medina's serious medical needs. *See Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.").   Thus, I **GRANT** the CDOC Motion to Dismiss in this regard and **DISMISS without prejudice** Claim 1 as to Defendant Herbert.   *See supra* n.6.

Defendant Keegan

The Estate alleges Defendant Keegan was a nurse at DRDC, who was responsible for providing adequate medical treatment to inmates, including Ms. Medina. [#1 at ¶¶ 12, 146].   While at DRDC, Defendant Keegan (with Defendant Quarles) observed Ms. Medina's "obvious" deteriorating health and was aware that Ms. Medina was in extreme pain and not receiving pain medication yet did nothing to abate that harm until an emergency room physician assistant informed Defendant Keegan of Ms. Medina's pain.   *See* [*id.* at ¶¶ 147, 153, 155-56].   The Complaint further alleges Defendant Keegan cancelled one of Ms. Medina's chemotherapy appointments, did not provide pain medications to Ms. Medina which obstructed her ability to receive chemotherapy, and then failed to make sure Ms. Medina received her prescribed chemotherapy.   *See* [*id.* at ¶¶ 157-60, 162].   All of this, the Estate alleges, caused Ms. Medina to suffer needless pain and discomfort and contributed to her passing.   *See generally* [*id.* at ¶¶ 165-70, 192-94].

The CDOC Defendants argue that the Estate fails to allege a deliberate indifference claim against Defendant Keegan because Defendant Keegan in fact provided Ms. Medina pain medication. *See* [#58 at 16-17]. But, again, the CDOC Defendants rely on materials beyond the Complaint that the court will not consider on the instant Motion. Even still, the CDOC Defendants contend the Estate merely alleges a medical malpractice claim or a disagreement with treatment, which do not rise to the level of deliberate indifference. *See* [#85 at 4-6]. I respectfully disagree.

As with Defendant Quarles, the Estate alleges Defendant Keegan was aware of Ms. Medina's constant pain and discomfort and need for chemotherapy treatment yet failed to abate Ms. Medina's pain and discomfort and interfered with Ms. Medina's receipt of the prescribed chemotherapy. I find these sufficient at this stage, when taking all factual allegations as true as I must, to establish Defendant Keegan consciously disregarded Ms. Medina's serious medical needs. *See Redmond*, 882 F.3d at 940 ("The subjective prong is met if prison officials intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed." (brackets and internal quotation marks omitted)). Thus, I **DENY** the CDOC Motion to Dismiss as to Defendant Keegan.

## Defendant Neary

The Estate alleges Defendant Neary was a nurse at DWCF, who was responsible for providing adequate medical treatment to inmates, including Ms. Medina. [#1 at ¶ 10]. On or about March 21, 2019, Defendant Neary reviewed Ms. Medina's medical records and learned of Ms. Medina's cervical cancer and need for treatment yet did not schedule Ms. Medina for cancer treatment or refer Ms. Medina to an oncologist. [*Id.* at ¶¶ 105-07]. Then, on or about June 21, 2019, Ms. Medina complained about uncontrolled pain to Defendant Neary, but Defendant Neary, despite Ms. Medina's visible discomfort, did not treat Ms. Medina or refer Ms. Medina for

treatment.  [*Id.* at ¶¶ 124-25, 127].  Defendant Neary was also allegedly aware of Ms. Medina's complaints of worsening symptoms on or about July 5, 16, and 18 2019, including Ms. Medina's recent blood transfusion due to excessive vaginal bleeding, yet did not take any action to abate those symptoms.  [*Id.* at ¶¶ 129-32, 135-36].  Finally, the Estate alleges that between April and July 2019, Defendant Neary was aware of Ms. Medina's deteriorating health but did not provide any treatment.  [*Id.* at ¶¶ 143-44].

Again, the CDOC Defendants move to dismiss Claim 1 as to Defendant Neary because the medical records reveal that Ms. Neary provided treatment to Ms. Medina for Ms. Medina's pain. *See* [#58 at 17-20].  While the medical records may play a dispositive role on summary judgment or at trial, the court's inquiry is limited to the allegations pleaded in the Complaint.  Based on the above allegations that the court presumes are true, I respectfully conclude that the Estate establishes that Defendant Neary was aware of Ms. Medina's increasing pain and discomfort associated with her cervical cancer and that the need for medical treatment was so obvious that the delay in treatment was patently unreasonable.  *See Self*, 439 F.3d at 1231-33.  Thus, I **DENY** the CDOC Motion to Dismiss as to Defendant Neary.

<u>Defendant Maul</u>

The Estate alleges that Defendant Randolph Maul, M.D. ("Defendant Maul") is the Chief Medical Officer of the CDOC, who was responsible for managing and supervising CDOC medical staff and developing and implementing procedures for the provision of adequate medical treatment to inmates at DWCF and DRDC.  [#1 at ¶ 17].  The Estate alleges Defendant Maul was aware of both Ms. Medina's obvious medical needs when she was transferred to DRDC and that Ms. Medina was not receiving adequate medical treatment but did nothing to abate that risk.  *See* [*id.* at ¶¶ 147, 152, 158, 159-62, 182].  The Estate alleges further that Defendant Maul was responsible for "all

final medical decisions made regarding inmates" and failed to ensure that his staff provided the necessary treatment to Ms. Medina in violation of CDOC policies. [*Id.* at ¶¶ 183, 186-90].

The CDOC Defendants argue that the Estate fails to allege factual allegations demonstrating Defendant Maul's personal participation in the alleged constitutional violation. [#58 at 21; #85 at 7-8]. They contend that the Estate fails to allege Defendant Maul played any role in the treatment of Ms. Medina and thus had no knowledge of Ms. Medina's serious medical needs. [#58 at 22; #85 at 7-8]. The Estate counters that it alleges Defendant Maul was aware that Ms. Medina required chemotherapy at the DRDC but was not receiving that prescribed treatment. [#80 at 7]. The Estate further contends that Defendant Maul was aware of Ms. Medina's extreme pain and discomfort, which hindered her ability to receive chemotherapy, and yet did nothing to abate that harm. [*Id.* at 7-8]. I respectfully agree with the Estate.

While the court would prefer more robust pleading, the Estate sufficiently alleges Defendant Maul's personal participation in the alleged constitutional violation. That is, the Estate alleges Defendant Maul was aware of Ms. Medina's need for chemotherapy at DRDC, knew that Ms. Medina was not receiving that prescribed treatment, knew that Ms. Medina's health was rapidly deteriorating, and still did nothing to assist Ms. Medina. *See, e.g.*, [#1 at ¶¶ 147, 152, 158, 159-62, 182]. I find these sufficient at this stage to allow an inference that Defendant Maul was aware of a substantial risk of harm to Ms. Medina yet consciously disregarded that risk. *See Walker*, 947 F.3d at 1249. Indeed, the CDOC Defendants concede that Defendant Maul reviewed Ms. Medina's medical records. *See* [#58 at 21]. Whether the Estate can prevail on this claim at summary judgment or trial is not before the court on the instant Motion to Dismiss. Thus, I **DENY** the CDOC Motion to Dismiss in this regard.

<u>Defendant Schrag</u>

The Estate alleges Defendant Stephanie Schrag ("Defendant Schrag") was a nursing supervisor, who was responsible for overseeing nursing at DWCF and DRDC, including the provision of adequate medical treatment to inmates. [#1 at ¶¶ 15]. The Estate continues that Defendant Schrag had personal knowledge of Ms. Medina's medical condition and the lack of treatment Ms. Medina received but did nothing to abate that substantial risk. *See* [*id.* at ¶¶ 178-79, 199-201].

The CDOC Defendants argue that the Estate offers only conclusory allegations regarding Defendant Schrag's personal participation in the alleged constitutional violation, and any allegation regarding Ms. Medina's treatment is insufficient to demonstrate deliberate indifference. [#58 at 24; #85 at 7-8]. I respectfully agree with the CDOC Defendants that the Estate fails to allege that Defendant Schrag was deliberately indifferent to Ms. Medina's serious medical needs for purposes of Claim 1. The Estate offers only conclusory allegations of Defendant Schrag's knowledge of Ms. Medina's serious medical needs, but there are no factual allegations linking Defendant Schrag to any inadequate treatment or interference with the treatment Ms. Medina did or did not receive. *See Oxendine*, 241 F.3d at 1279 (explaining that deliberate indifference may arise where the medical provide affirmatively denies treatment or access to a medical personnel that can provide treatment). Nor is the court convinced that Defendant Schrag's alleged inaction demonstrates anything more than negligence, which is insufficient. *See Verdecia*, 327 F.3d at 1175 ("Deliberate indifference requires more than a showing of simple or heightened negligence."). Thus, I **GRANT** the CDOC Motion to Dismiss in this regard and **DISMISS without prejudice** Claim 1 against Defendant Schrag. *See supra* n.6.

## II.        Claim 2 - Supervisory Liability

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).  But liability will not lie unless a plaintiff establishes each defendants' personal participation in the constitutional violation. *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) ("It is particularly important that plaintiffs make clear exactly *who* is alleged to have done *what* to *whom*, as distinguished from collective allegations."  (emphasis in original) (brackets, ellipsis, and internal quotation marks omitted)).  Personal participation is a fundamental element of any § 1983 claim, because the defendants' liability and entitlement to qualified immunity hinges on an assessment of each defendant's conduct and culpability.[6]  *See Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 982 (10th Cir. 2017); *A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016).

For supervisory liability, it is not enough that a defendant was merely a supervisor for purposes of personal participation, as § 1983 does not "authorize liability under a theory of respondeat superior."  *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) (internal quotation marks omitted).  Rather, a plaintiff must establish an affirmative link between the supervisor and the constitutional violation, "which requires proof of three interrelated elements: (1) personal involvement; (2) causation; and (3) state of mind."  *Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016).  A plaintiff may do so by alleging that a supervisor-defendant "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights," such as "creat[ing], actively endors[ing], or implement[ing] a policy which is constitutionally infirm." *Doe v. Woodard*, 912 F.3d 1278, 1290 (10th Cir. 2019) (citations and internal quotation marks omitted).  Put simply, supervisor liability

---

[6] No Defendant has invoked qualified immunity on the instant Motions to Dismiss.

depends on the supervisor-defendant's own misconduct, not the misconduct of her subordinates. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

### A.    Defendant Quarles

The Complaint alleges Defendant Quarles was responsible for supervising nurses at DRDC and ensuring inmates received adequate medical care.  *See* [#1 at ¶¶ 13, 145].  At bottom, Claim 2 alleges Defendant Quarles failed to supervise her medical staff which caused a violation of Ms. Medina's constitutional rights.  *See* [*id.* at ¶¶ 185, 207, 212-13].  Defendant Quarles argues that these allegations are insufficient to allege a supervisory liability claim.  *See* [#36 at 4-8; #83 at 4-6].  She contends that the Estate offers no factual allegations to support an inference that Defendant Quarles created, promulgated, or implemented a constitutionally infirm policy, nor are there any factually allegations establishing Defendant Quarles's failure to supervise her medical staff that caused any harm to Ms. Medina.  *See* [#36 at 4-8; #83 at 4-6].  I respectfully agree.

The Complaint alleges generally that Defendant Quarles was responsible for supervising the nurses at DRDC and ensuring that all inmates received adequate medical treatment.  But the Complain lacks any factual allegations linking Defendant Quarles's alleged failure to supervise her staff to the violation of Ms. Medina's constitutional rights.  *See Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d 1271, 1315 (D.N.M. 2015) (concluding that the plaintiff did "not allege how the lack of supervision caused D. Saenz' death.  Accordingly, Saenz' Complaint lacks the necessary factual allegations to state a failure-to-train or failure-to-supervise cause of action.").  Indeed, the only suggestion in the Complaint is that Defendant Quarles and Defendant Keegan "were primary day-to-day supervisors at the DRDC infirmary and had oversight and direction over other medical staff providing care to Ms. Medina."  [#1 at ¶ 146].  Aside from factual allegations linking Defendant Quarles to the inadequate medical care Ms. Medina received as discussed above,

the Complaint is silent as to how Defendant Quarles failed to supervise other medical staff for the court to infer that Defendant Quarles was deliberately indifferent to the DRDC's policy regarding adequate medical care, which then caused Ms. Medina's constitutional violations.  *See Burke*, 935 F.3d at 997 (explaining that supervisory liability may lie only when the plaintiff establishes an affirmative link between the supervisor-defendant and the constitutional violation, including that the supervisor-defendant acted with deliberate indifference).

Based on the foregoing, I conclude that the Estate fails to allege a supervisory liability claim against Defendant Quarles.  Accordingly, I **GRANT** the Quarles Motion to Dismiss in this regard and **DISMISS without prejudice** Claim 2 as to Defendant Quarles.  *See supra* n.6.

### B.      The CDOC Defendants

The CDOC Defendants argue that the Estate fails to plead plausible supervisory liability claims against the purported Supervisory Defendants.  *See generally* [#58; #85].  Largely, the CDOC Defendants aver that the Estate fails to plead the Supervisory Defendants personally participated in the alleged constitutional violation, aside from conclusory assertions to that effect. I consider the Parties' arguments below.

<u>Defendant Dixon</u>

The Estate alleges Defendant Dixon was a nursing supervisor, who was responsible for overseeing the nursing services at DWCF and DRDC.  [#1 at ¶ 16].  Relevant here, the Estate alleges Defendant Dixon was aware of Ms. Medina's medical condition yet did nothing to provide treatment to Ms. Medina, which included Defendant Dixon's failure to supervise her staff.  [*Id.* at ¶¶ 136, 180-181, 199-201, 207].

The CDOC Defendants argue that Defendant Dixon cannot be liable as a supervisor under Claim 2 because she was not a supervisor, but rather a registered nurse.  [#58 at 13; #85 at 5].  The

Estate does not address this argument in its Response.  *See* [#80].  But even assuming Defendant Dixon was a supervisor for purposes of Claim 2, the Estate fails to offer any factual allegations linking Defendant Dixon's supervisory conduct to the alleged constitutional violation.  *See Burke*, 935 F.3d at 997.  Indeed, as discussed above, the Estate fails to plead Defendant Dixon was deliberately indifferent to Ms. Medina's serious medical needs and offers only conclusory assertions that Defendant Dixon failed to supervise her staff.  This is insufficient.  *See Perry*, 892 F.3d at 1121 (explaining that § 1983 does not authorize liability under a theory of respondeat superior).  Thus, I **GRANT** the CDOC Motion to Dismiss in this regard and **DISMISS without prejudice** Claim 2 against Defendant Dixon.  *See supra* n.6.

Defendant Maul

The Estate alleges that Defendant Maul is the Chief Medical Officer of the CDOC, who was responsible for managing and supervising CDOC medical staff and developing and implementing procedures for the provision of adequate medical treatment to inmates at DWCF and DRDC.  [#1 at ¶ 17].  The Estate alleges that in addition to being aware of Ms. Medina's serious medical needs yet disregarding those needs, [*id.* at ¶¶ 147, 152, 158, 159-62, 182], Defendant Maul was responsible for "all final medical decisions made regarding inmates" and failed to ensure that his staff provided the necessary treatment to Ms. Medina in violation of CDOC policies, *see* [*id.* at ¶¶ 183, 186-90].

As before, the CDOC Defendants argue the Estate fails to allege Defendant Maul's personal participation for purposes of a supervisory liability claim.  [#58 at 21-22; #85 at 7-8].  The Estate responds, and the court agrees, that it sufficiently alleges Defendant Maul's deliberate indifference to Ms. Medina's serious medical needs for purposes of Claim 1 and does so too for purposes of Claim 2.  [#80 at 7-8].  According to the Estate, it alleges Defendant Maul was the

Chief Medical Officer for the CDOC, he was aware of Ms. Medina's need for chemotherapy and that she was not receiving that treatment, and that CDOC policy vests Defendant Maul with final medical decisionmaking and the responsibility to ensure his staff provides adequate treatment to inmates, including Ms. Medina.  [*Id.* at 8, 9].

At this juncture, I find the Estate's allegations sufficient to demonstrate that Defendant Maul, as Chief Medical Officer for the CDOC, personally participated in the alleged constitutional violation by having notice of Ms. Medina's serious medical needs yet failed to follow CDOC policy and ensure medical personnel provided Ms. Medina adequate treatment.  *See Schneider*, 717 F.3d at 770-71 (explaining that a plaintiff may establish supervisory liability by alleging the supervisor was aware that its inaction was substantially certain to result in a constitutional violation, which the plaintiff may establish by alleging a pattern of tortious conduct or where the constitutional violation is highly predictable).  Thus, I **DENY** the CDOC Motion to Dismiss in this regard.

### Defendant Schrag

The Estate alleges Defendant Schrag was a nursing supervisor, who was responsible for ensuring inmates received adequate medical treatment at DWCF and DRDC.  [#1 at ¶ 15].  The Estate continues that Defendant Schrag had personal knowledge of Ms. Medina's medical condition and the lack of treatment Ms. Medina received but did nothing to abate that substantial risk.  *See* [*id.* at ¶¶ 178-79, 199-201].

The CDOC Defendants argue that these allegations are insufficient for purposes of demonstrating a supervisory liability claim.  [#58 at 24; #85 at 7-8].  The Estate counters that it sufficiently alleges Defendant Schrag, as a supervisor, was aware of Ms. Medina's serious medical

needs and lack of treatment but failed to direct her staff to offer adequate medical treatment to Ms. Medina.  *See* [#80 at 8].  I respectfully disagree with the Estate.

Most notably, the Estate offers only conclusory assertions that Defendant Schrag failed to supervise her staff.  Indeed, the Estate largely relies on Defendant Schrag's alleged position as a supervisor to hold her responsible under Claim 2 and does not offer any facts linking Defendant Schrag's supervision to the alleged constitutional violation.  *See Saenz*, 105 F. Supp. 3d at 1315 (concluding that the plaintiff did "not allege how the lack of supervision caused D. Saenz' death. Accordingly, Saenz' Complaint lacks the necessary factual allegations to state a failure-to-train or failure-to-supervise cause of action.").  Again, § 1983 does not authorize liability under a theory of respondeat superior.  *See Perry*, 892 F.3d at 1121.  Thus, I **GRANT** the CDOC Motion to Dismiss in this regard and **DISMISS without prejudice** Claim 2 as to Defendant Schrag.  *See supra* n.6.

### Defendant Cullyford

The Estate alleges that Defendant Tina Cullyford ("Defendant Cullyford") was the Health Services Administrator for the CDOC, who was responsible for the "provision and administrative supervision of health care services at DWCF and DRDC."  [#1 at ¶ 14].  The Estate states that Defendant Cullyford "failed to supervise medical staff to ensure that inmates with serious medical conditions, including Ms. Medina, were provided with appropriate and timely health care for cancer and/or access to outside specialists for cancer treatment to ensure her health and prevent her deterioration and death."  [*Id.* at ¶ 177].

The CDOC Defendants argue, as before, that these allegations are insufficient to allege Defendant Cullyford's personal participation in the alleged constitutional violation for purposes of a supervisory liability claim.  [#58 at 22].  I agree.  The Estate's allegations against Defendant

Cullyford are devoid of any factual allegations linking Defendant Cullyford's conduct to the alleged constitutional violation.  Instead, the Estate attempts to hold Defendant Cullyford liable merely because of her position as the Health Services Administrator, but this is insufficient.  *See Perry*, 892 F.3d at 1121.  Thus, I **GRANT** the CDOC Motion to Dismiss in this regard and **DISMISS without prejudice** Claim 2 as to Defendant Cullyford.  *See supra* n.6.

Warden Long

The Estate alleges that Defendant Ryan Long ("Defendant Long" or "Warden Long") was the Warden at DWCF, who was responsible for the care and custody of all DWCF inmates. [#1 at ¶ 18].  The Estate alleges further that Warden Long failed to implement policies or procedures to ensure inmates, like Ms. Medina, received adequate medical care for their serious medical needs. [*Id.* at ¶¶ 191, 207].

The CDOC Defendants argue that the Estate fails to allege a claim for supervisory liability against Warden Long because the Estate fails to plead that Warden Long was aware of Ms. Medina's serious medical needs and the need for treatment yet consciously disregarded each. [#58 at 24; #85 at 4].  I respectfully agree.

The Estate fails to plead any facts alleging Warden Long was aware of Ms. Medina's serious medical needs and need for treatment yet disregarded each, such that the Warden's inaction could be actionable.  *See Sutton v. Corrs. Corp. of Am.*, 323 F. App'x 685, 687(10th Cir. 2009) (concluding the assistant warden and warden were not liable under § 1983 in their supervisory capacities because the plaintiff "failed to establish that they either personally participated in the alleged violations or were aware of circumstances that would trigger those violations.").  Nor does the Estate allege that Warden Long implemented, created, or enforced a constitutionally infirm policy or set in motion a series of events that was sure to violate Ms. Medina's constitutional rights.

*See Doe*, 912 F.3d at 1290. And while personal involvement in the alleged constitutional is not necessarily required for purposes of supervisory liability, *see Wilson v. Montano*, 715 F.3d 847, 858 (10th Cir. 2013), the Estate must still allege a deliberate, intentional act by Warden Long to violate Ms. Medina's constitutional rights, *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010). This, the Estate has not done. Thus, I **GRANT** the CDOC Motion to Dismiss in this regard and **DISMISS without prejudice** Claim 2 against Warden Long. *See supra* n.6.[7]

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)     Defendant Quarles's Motion to Dismiss [#36] is **GRANTED IN PART and DENIED IN PART** as follows:

      a.     Claim 1 against Defendant Quarles **REMAINS**;

      b.     Claim 2 against Defendant Quarles is **DISMISSED without prejudice**;

(2)     Defendant Miller's Motion to Dismiss [#42] is **GRANTED** as follows:

      a.     Claim 1 against Defendant Miller is **DISMISSED without prejudice**; and

(3)     The CDOC Defendants' Motion to Dismiss [#58] is **GRANTED IN PART and DENIED IN PART** as follows:

      a.     Claims 1 and 2 against Defendant Dixon are **DISMISSED without prejudice**;

      b.     Claim 1 against Defendant Herbert is **DISMISSED without prejudice**;

---

[7] Plaintiff mentions in passing that "any deficiencies could be cured by amendment," *see, e.g.*, [#79 at 16], but the Local Rules of Civil Practice precludes a party from making a motion in a Response. D.C.COLO.LCivR 7.1(d). Given the Local Rule, the fact that the time for amendment as a matter of right has elapsed, and no specific amendments are proposed, this court finds that it is not appropriate to preemptively approve leave to amend. Rather, the better approach appears to have Plaintiff proceed according to the Federal Rules of Civil Procedure and D.C.COLO.LCivR 15, insofar as it seeks leave to amend any claim that has been dismissed without prejudice.

c.   Claim 1 against Defendant Keegan **REMAINS**;

d.   Claim 1 against Defendant Neary **REMAINS**;

e.   Claims 1 and 2 against Defendant Maul **REMAIN**;

f.   Claims 1 and 2 against Defendant Schrag are **DISMISSED without prejudice**;

g.   Claim 2 against Defendant Cullyford is **DISMISSED without prejudice**; and

h.   Claim 2 against Defendant Long is **DISMISSED without prejudice**.

DATED: December 17, 2020                              BY THE COURT:

Nina Y. Wang
United States Magistrate Judge