IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01443-NYW

THE ESTATE OF GABRIELLE MEDINA,

    Plaintiff,

v.

JENNIFER ROSS SAMUELS,
TIFFANY NEARY,
RANDOLPH MAUL,
LETO QUARLES, and
JILL KEEGAN,

    Defendants.

---

### ORDER ON MOTION TO QUASH

Magistrate Judge Nina Y. Wang

This matter is before the court pursuant to the Nonparty CDOC's Motion to Quash Plaintiff's Subpoena to Produce Documents in Part (the "Motion" or "Motion to Quash") [Doc. 128] filed on October 15, 2021 by non-party Colorado Department of Corrections ("CDOC"). The court considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated September 1, 2020. [Doc. 55]. After review of the Motion and associated briefing, the entire docket, and the applicable law, the Motion to Quash is **GRANTED**.

### BACKGROUND

Gabrielle Medina ("Ms. Medina") passed away on October 13, 2019 due to complications from cervical cancer. [Doc. 1 at ¶ 170]. Prior to her death, Ms. Medina was in the custody of the CDOC, and while incarcerated, she discussed her cancer diagnosis with and requested treatment from, *inter alia*, Defendant Jennifer Samuels. [*Id.* at ¶¶ 8, 46, 51]. On May 20, 2020, the Estate

of Gabrielle Medina ("Plaintiff" or the "Estate") initiated this civil action, asserting two claims pursuant to 42 U.S.C. § 1983: (1) deliberate indifference to Ms. Medina's serious medical needs in violation of the Eighth and Fourteenth Amendments, for which Defendant Samuels was named as a Defendant; and (2) a deliberate indifference claim based on supervisory liability, which is not raised against Defendant Samuels. *See generally* [*id.*]. The Estate did not name the CDOC as a defendant in this matter. *See* [*id.*]. On December 17, 2020, this court dismissed a number of Defendants from this case upon ruling on three then-pending Motions to Dismiss. *See* [Doc. 97 at 31-32]. Relevant here, Defendant Samuels did not seek dismissal of Plaintiff's deliberate indifference claim against her, and this claim therefore remains. *See* [*id.*].

As part of discovery in this case, the Estate served non-party CDOC with a Subpoena Duces Tecum (the "Subpoena"). *See* [Doc. 128-1]. The Subpoena requests that the CDOC produce, *inter alia*: (1) medical records of any and all patients seen by Defendant Samuels in which the patient had or was believed to have cancer which the CDOC has in its possession, including "any and all records of other providers;" (2) any and all consultation requests and appointment records related to those patients; and (3) any and all CDOC communications regarding those patients, consultation requests, and appointment records. [*Id.* at 4]. On October 15, 2021, the CDOC filed the instant Motion to Quash, arguing that these three requests are improper because they seek privileged documents, are not relevant or proportional to the needs of the case, and are unduly burdensome to the CDOC.[1] [Doc. 128 at 2]. The CDOC requests that this court quash the Subpoena in part and "reliev[e] CDOC from its responsibility to respond" to the above requests. [*Id.* at 7]. The court ordered the Estate to respond on or before October 25, 2021, *see* [Doc. 129], which the Estate

---

[1] The CDOC represents, and Plaintiff does not dispute, that it has otherwise responded to the Subpoena with any responsive documents. [Doc. 128 at 2; Doc. 130].

2

did. [Doc. 130]. In response, the Estate argues that the documents requested are not privileged, that its requests are relevant and proportional to the needs of the case, and that production of the requested documents would not be unduly burdensome on the CDOC. [*Id.* at 4-12]. Because this matter is ripe for consideration, the court considers the Parties' arguments below.[2]

## LEGAL STANDARDS

### I.  Rule 26(b)(1)

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id*. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. Moreover, in considering whether the discovery sought is proportional, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*. The court, "[o]n motion or on its own, . . . must limit the frequency or extent of discovery otherwise allowed" if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations. Advisory

---

[2] In its Minute Order ordering a Response, the court stated that no replies would be permitted absent leave of court. [Doc. 129].

Comm. Notes to Fed. R. Civ. P. 26(b)(1). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 350 (D. Colo. 2004) (citations omitted). Conversely, "when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Cunningham v. Standard Fire Ins. Co.*, No. 07-cv-02538-REB-KLM, 2008 WL 2668301, at *1 (D. Colo. July 1, 2008). The court may also consider the fact that the discovery sought is directed at a nonparty, and in such case, the ordinary burden imposed under Rule 26 is generally greater. *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998).

## II.     Rule 45

A subpoena served on a third party pursuant to Rule 45 of the Federal Rules of Civil Procedure is considered discovery within the meaning of the Federal Rules of Civil Procedure. *Rice v. United States*, 164 F.R.D. 556, 556-57 (N.D. Okla. 1995). Accordingly, a Rule 45 subpoena must satisfy the same standards that govern discovery between the parties, i.e., to be enforceable, it must seek information that is relevant to a party's claims or defenses and that is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In addition, discovery conducted pursuant to a Rule 45 subpoena must be concluded by the deadline specified in the court's Scheduling Order. *Grant v. Otis Elevator Co.*, 199 F.R.D. 673, 675 (N.D. Okla. 2001); *Rice*, 164 F.R.D. at 558. On a timely motion, the court must quash or modify a subpoena that, *inter alia*: (1) fails to allow a reasonable time to comply; (2) requires the disclosure of privileged or other

4

protected matter, if no exception or waiver applies; (3) subjects a person to undue burden; or (4) requires the disclosure of a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(d)(3)(A), (d)(3)(B).

## ANALYSIS

As discussed above, Rule 26 of the Federal Rules of Civil Procedure provides that a party may discover any nonprivileged matter relevant to the party's claim or defense, so long as it is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Larson v. Larson*, 687 F. App'x 695, 707 (10th Cir. 2017) (unpublished). The CDOC argues that the Subpoena should be quashed because the requested documents are privileged, not relevant to this case, not proportional to the needs of this case, and would be unduly burdensome for the CDOC to produce. [Doc. 128]. The court considers these arguments below.

**I.    Privilege**

First, the CDOC argues that the documents are privileged pursuant to section 24-702-204 of the Colorado Revised Statutes, which provides in pertinent part:

> The custodian [of public records] shall deny the right of inspection of the following records, unless otherwise provided by law; except that the custodian shall make any of the following records . . . available to the person in interest in accordance with this subsection (3):
>
>> (I) Medical[] . . . and electronic health records, on individual persons, . . . ; but either the custodian or the person in interest may request a professionally qualified person, who shall be furnished by the said custodian, to be present to interpret the records[.]

Colo. Rev. Stat. § 24-72-204(3)(a)(I). The CDOC asserts that, because the Subpoena "seek[s] the records of 'any and all patients seen by Jennifer Ross,'" this would include privileged medical information of "dozens, if not hundreds, of patients." [Doc. 128 at 3]. It further argues that the Estate is not a "person in interest" entitled to access the records of non-party inmates. [*Id.*]. In

5

response, Plaintiff argues that this statute is inapplicable here. [Doc. 130 at 4]. More specifically, Plaintiff contends that the statute cited by the CDOC is part of the Colorado Open Records Act ("CORA") and governs open-records-act requests, not discovery in civil litigation. [*Id.*]. Plaintiff argues that, because this is the only basis of privilege asserted by the CDOC, and because such privilege does not apply here, this is not an appropriate basis to quash the Subpoena. [*Id.* at 4-5].

The court agrees with Plaintiff. Section 24-72-204 is a subsection of CORA, *see* Colo. Rev. Stat. § 24-72-200.1, which establishes that it is "the public policy of this state that all public records shall be open for inspection by any person at reasonable times, except as provided in this part 1 or as otherwise specifically provided by law." Colo. Rev. Stat. § 24-72-201. Section 24-72-204 sets forth the documents which are not accessible via an open records request, such as medical or health records of individual persons. Colo. Rev. Stat. § 24-72-204(3)(a).

"Colorado has long held, however, that the open records laws are limited by the language 'otherwise provided by law.'" *Lumpkin v. Clark*, No. 07-cv-02015-MSK-KMT, 2009 WL 960694, at *2 (D. Colo. Apr. 8, 2009). The Colorado Supreme Court has "construe[d] this limiting language . . . as a reference to the rules of civil procedure and as expressive of the legislative intent that a court should consider and weigh whether disclosure would be contrary to the public interest." *Martinelli v. District Ct. for the City and Cty. of Denver*, 612 P.2d 1083, 1093 (Colo. 1980). "[T]he legislature did not intend that the open records laws would supplant discovery practice in civil litigation." *Id.*; *cf. United States v. Hudson*, No. CRIM.A. 13-20063-01, 2013 WL 4768084, at *6 (D. Kan. Sept. 5, 2013) ("The fact that the Kansas Open Records Act exempts mental health records from disclosure requirements does not mean that such records are privileged in a separate legal proceeding.").

Here, the CDOC raises a privilege argument only under Colo. Rev. Stat. § 24-72-204. *See generally* [Doc. 128]. The party asserting a privilege has the burden of demonstrating that the asserted privilege applies, *Zander v. Craig Hosp.*, 267 F.R.D. 653, 658 (D. Colo. 2010), and because the statute upon which the CDOC's argument is based is inapplicable here, the court finds that the CDOC has not met that burden. Accordingly, there is no basis to quash the Subpoena on privilege grounds.

## II. Relevancy and Proportionality

In the alternative, the CDOC argues that the Subpoena requests are not relevant to this matter. [Doc. 128 at 4]. According to the CDOC, medical records of non-party inmates are not relevant to determining whether Defendants were deliberately indifferent to the medical needs of Ms. Medina specifically. [*Id.*]. In response, Plaintiff argues that the medical records of non-party inmates are relevant in this matter to "implicate the subjective awareness of Defendant Samuels at the time Ms. Medina was under her care," as such records would demonstrate Defendant Samuels's knowledge of cancer treatment processes, the need for urgency or timeliness in treating cancer, the risks involved in failing to act promptly, and "a lack of mistake regarding what a timely consultation with and/or referral to oncologists looks like." [Doc. 130 at 7].[3]

***Relevancy Standards***. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401. The court "broadly construes relevancy, and a request for discovery should be considered relevant if it is possible that the information sought may be relevant to the

---

[3] The Parties also raise arguments as to whether such evidence would be impermissible character evidence under Rule 404 of the Federal Rules of Evidence. *See* [Doc. 128 at 4; Doc. 130 at 6]. The court does not address these arguments here, as evidence does not need to be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1).

claim or defense of any party." *Church v. Dana Kepner Co.*, No. 11-cv-02632-CMA-MEH, 2013 WL 24437, at *4 (D. Colo. Jan. 2, 2013). As set forth above, "when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Cunningham*, 2008 WL 2668301, at *1. Here, the court does not find that the relevancy of the non-party patient medical files, consultation requests, appointment records, and communications regarding the aforementioned items is readily apparent on the face of the Subpoena. Thus, it is Plaintiff's burden to demonstrate the relevancy of the requested materials.

*Application*. Plaintiff argues that the requested discovery is relevant to the subjective inquiry necessary to succeed on its Eighth Amendment deliberate indifference claim against Defendant Samuels. [Doc. 130 at 3]; [*id.* at 7 (asserting that the evidence is relevant to "the subjective awareness *of Defendant Samuels*") (emphasis added)]. In its Complaint, the Estate alleges that that Defendant Samuels was unconstitutionally indifferent to Ms. Medina's serious medical needs because Defendant Samuels knew that Ms. Medina had cancer and refused to refer her to an oncologist who could treat her and/or otherwise ignored Ms. Medina's worsening symptoms. *See, e.g.*, [Doc. 1 at ¶¶ 52-53, 56-57, 65-66, 200-01]. To succeed on an Eighth Amendment deliberate indifference claim, the plaintiff must establish that the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). To make such a showing, the plaintiff must demonstrate that (1) the medical need was sufficiently objectively serious (the "objective prong"); and (2) the official knew of and disregarded an excessive risk to the plaintiff's health or safety (the "subjective prong"). *Id.* at 751. "Each step of this inquiry is fact-intensive." *Rachel v. Troutt*, 820 F.3d 390, 394 (10th Cir. 2016) (quoting *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007)).

8

With respect to the subjective prong, a plaintiff alleging an Eighth Amendment violation must show that the defendant knew of a "substantial risk of harm and disregarded that risk[] by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citation omitted).

The Estate asserts that the documents requested in the Subpoena are "relevant to show other instances in which Defendant Samuels has treated inmates with cancer; information demonstrative of her knowledge of the processes, timelines, and risks/dangers involved; and lack of mistake regarding her responsibilities to timely consult with and/or refer [Ms. Medina] to oncologists." [Doc. 130 at 3]. It argues that "[o]ther provider records . . . would likely provide additional evidence of [Defendant Samuels's] knowledge of the processes involved in cancer treatment and/or coordination, the need for urgency and/or timeliness, and the risks/dangers involved in failing to promptly act, as well as a lack of mistake regarding what a timely consultation with and/or referral to oncologists looks like." [*Id.* at 7].

The court respectfully disagrees with Plaintiff that its request for medical records of non-party cancer patients is relevant to the subjective prong of Plaintiff's Eighth Amendment claim against Defendant Samuels. As set forth above, the relevant question underlying Plaintiff's claim is whether Defendant Samuels was deliberately indifferent to *Ms. Medina's* serious medical needs, and to succeed on that claim, Plaintiff must prove that Defendant Samuels was constitutionally deficient in the treatment of *Ms. Medina*. *See Mata*, 427 F.3d at 751. Therefore, Plaintiff's claim

9

will be resolved "based upon the [decedent's] medical records and the testimony of . . . the individuals involved in providing (or failing to provide) [her] treatment." *Thomas v. Loftin*, No. 3:08-cv-101-MJR, 2010 WL 234998, at *1 (S.D. Ill. Jan. 15, 2010). It will not be based upon an examination of Defendant Samuels's history of treating other incarcerated cancer patients or upon other unnamed medical providers' treatment of those patients, as these factors do not bear on Plaintiff's claim. *See* Fed. R. Evid. 401; *compare Gonzalez v. Choudhary*, No. CIV 08-0076-JHR-AMD, 2009 WL 1025543, at *3 (D.N.J. Apr. 15, 2009) (finding other patients' medical records relevant to the plaintiff's Emergency Medical Treatment and Active Labor Act claim, because a relevant inquiry to the claim was whether the plaintiff was treated differently than other patients).[4]

Courts analyzing the relevancy of non-party medical records in the context of an Eighth Amendment claim asserted against an individual medical provider have consistently found that such records are not relevant in this context. *See, e.g.*, *Coats v. Chaudhri*, No. 1:13-cv-02032-BAM (PC), 2016 WL 1046233, at *4 (E.D. Cal. Mar. 16, 2016) ("Documentation regarding whether and what procedures were performed on other patients not involved in this matter is not relevant to whether Defendant Chaudhri was deliberately indifferent to Plaintiff's serious medical needs as alleged in this action."); *Awe v. Clarke*, No. 7:13-cv-00143, 2014 WL 948880, at *2 n.2 (W.D. Va. Mar. 11, 2014), *aff'd sub nom. Awe v. Miller*, 581 F. App'x 170 (4th Cir. 2014)

---

[4] In its Response, Plaintiff indicated that it would file a Motion to Amend the Complaint, [Doc. 130 at 2], and has since filed that motion. [Doc. 131]. The Estate asserts that it "alleges not only specific failures by the identified defendants, but also systematic failures of COC employees to establish and/or follow appropriate policies, procedures, protocols, and provide oversight, supervision, management, and training to employees/contractors who are responsible for cancer patient-inmates in the CDOC." [Doc. 130 at 2]. However, the Motion to Amend the Complaint has not yet been ruled on, and the new factual allegations contained in Plaintiff's proposed Amended Complaint [Doc. 131-2] are not part of this case. Nor is this court convinced that even if Plaintiff is allowed to amend, Topics 1-3 of this Subpoena are proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

(unpublished) ("This action is pursuant to 42 U.S.C. § 1983 and the Eighth Amendment, and Dr. Miller's history with other patients is not relevant to the disposition of Plaintiff's specific claim of deliberate indifference."); *Dugan v. Middlebrooks*, No. 5:10-CV-367-OC-10PRL, 2014 WL 3894299, at *3 (M.D. Fla. Aug. 8, 2014), *aff'd sub nom. Dugan v. Warden, FCC Coleman-USP I*, 673 F. App'x 940 (11th Cir. 2016) (unpublished) ("[T]he care and treatment that other inmates received is not relevant to Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs.").[5]

Insofar as Plaintiff argues that other inmates' medical records are relevant to whether Defendant Samuels was deliberatively indifferent to Plaintiff's serious medical need because the records will provide evidence of Defendant Samuels's knowledge or understanding of cancer treatment in general, *see* [Doc. 130 at 7], the court respectfully disagrees.  Plaintiff has not adequately explained why private medical files of unnamed incarcerated cancer patients, memorializing unknown treatment on unknown dates, would demonstrate such knowledge on the part of Defendant Samuels with respect to Ms. Medina's treatment, particularly where the large majority of such medical files likely will have nothing to do with Defendant Samuels or her treatment.  A conclusory assertion that the requested documents are relevant is insufficient to meet the heightened Rule 26 burden on this Motion.  *Echostar*, 180 F.R.D. at 394.  Moreover, "[t]he facts and circumstances of each inmate's medical condition [are] different," *Bovarie v. Schwarzenegger*, No. 08-cv-1661 LAB NLS, 2011 WL 719206, at *3 (S.D. Cal. Feb. 22, 2011),

---

[5] *See also Thomas*, 2010 WL 234998, at *1; *Oliver v. Calderon*, No. 6:17-cv-1792-ORL-31TBS, 2021 WL 4528127, at *3 (M.D. Fla. Feb. 24, 2021); *cf. Yielding v. Corr. Med. Servs.*, No. 5:11-CV-00261-SWW, 2012 WL 3596011, at *6 (E.D. Ark. July 10, 2012), *report and recommendation adopted*, 2012 WL 3596006 (E.D. Ark. Aug. 20, 2012) (in motion-to-dismiss context, finding that "[a]ffidavits from other inmates concerning their alleged lack of constitutional medical care and treatment are not relevant . . . to this Court's decision concerning [the plaintiff's] claims").

and the manner in which Defendant Samuels or other providers treated other cancer patients would not necessarily demonstrate what Defendant Samuels knew with respect to the treatment of Ms. Medina, and therefore "will not shed any light on the question in this litigation." *Id.* at *5; *cf. Brown v. Montoya*, No. CV 10-81 KJG/ACT, 2014 WL 12707238, at *8 (D.N.M. Jan. 13, 2014) (considering whether requested discovery was relevant for the party's stated purpose for obtaining information). In addition, litigation as to whether or not Defendant Samuels' care was deficient as to other non-parties is not appropriate in this action, and could overwhelm the core issues here.

For all of these reasons, the court finds that Plaintiff has not met its burden of demonstrating that the medical records—and, as a result, the ancillary consultation requests, appointment records, and CDOC communications—are relevant to this matter.

## III. Rule 26 Considerations

Finally, the court briefly addresses the scope of the Estate's request. As set forth above, Rule 26 requires the court "[o]n motion or on its own" to limit the extent of discovery if the court determines that the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The court finds that such is the case here, particularly where the discovery is sought against a non-party.

More specifically, the court finds that there are other, less burdensome means by which Plaintiff may obtain information concerning Defendant Samuels's "knowledge of the processes involved in cancer treatment and/or coordination, the need for urgency and/or timeliness, and the risks/dangers involved in failing to promptly act, as well as a lack of mistake regarding what a timely consultation with and/or referral to oncologists looks like." [Doc. 130 at 7]. In fact, the Estate represents in its Response that it *has* obtained information relating to Defendant Samuels's knowledge of cancer treatments and treatment processes. *See* [Doc. 130 at 2 ("Defendant Samuels

has claimed that she was ignorant of the outside provider who was contracted to provide radiation and chemotherapy treatment.")].[6] While the court understands the Estate's concerns of accuracy and desire to verify Defendant Samuels's representations and credibility, the Estate does not argue that it cannot meet that end through means less burdensome than requiring the CDOC to produce numerous non-party private medical files. *See* [Doc. 130]; *see also Franklin v. United States*, No. 12-1167 KBM/LFG, 2013 WL 11336864, at *8 (D.N.M. Aug. 28, 2013) (sustaining objections to request for production where the request was "exceedingly broad" and where the information sought could "be obtained from other sources that [were] less burdensome"); *Denver Homeless Out Loud v. Denver*, No. 20-cv-02985-WJM-SKC, 2020 WL 7230641, at *3 (D. Colo. Dec. 8, 2020) (granting motion to quash where the party seeking discovery had "failed to convince the Court that they [could not] obtain the information they [sought] from another source"). Discovery in this case is not yet closed, *see* [Doc. 120 at 2], and the court finds that there are less burdensome ways to obtain the information sought in the Subpoena, such as, for example, narrowly drawn written discovery requests or seeking kites from the CDOC which have raised issues concerning the medical treatment from Defendant Samuels. Because the court finds that the scope of the Estate's request exceeds the bounds of Rule 26(b)(2)(C), the court finds that it is appropriate to quash the Subpoena in part, with respect to Requests 1, 2, and 3.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) The Nonparty CDOC's Motion to Quash Plaintiff's Subpoena to Produce Documents in Part [Doc. 128] is **GRANTED**; and

---

[6] Moreover, Plaintiff's red-lined proposed Amended Complaint appears to demonstrate that Plaintiff has sought and obtained information related to Defendant Samuels's knowledge through discovery. *See, e.g.*, [Doc. 131-2 at ¶¶ 45-47, 104, 213, 239-40, 254-55, 292, 296].

13

(2) The Subpoena [Doc. 128-1] is hereby **QUASHED in part** and only with respect to Requests 1, 2, and 3.

DATED: November 5, 2021    BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge