**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-01443-NYW

THE ESTATE OF GABRIELLE MEDINA,

    Plaintiff,

v.

JENNIFER ROSS SAMUELS,
TIFFANY NEARY,
RANDOLPH MAUL, and
JILL KEEGAN,

    Defendants.

---

## ORDER ON MOTION TO QUASH

---

Magistrate Judge Nina Y. Wang

This matter is before the court pursuant to the Nonparty CDOC's Motion to Quash Plaintiff's Subpoena to Produce Documents (the "Motion" or "Motion to Quash") [Doc. 159] filed on December 2, 2021 by non-party Colorado Department of Corrections ("CDOC"). The court considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated September 1, 2020. [Doc. 55]. After review of the Motion and associated briefing, the entire docket, and the applicable law, the Motion to Quash is **GRANTED IN PART and DENIED IN PART**.

### FACTUAL BACKGROUND

Gabrielle Medina ("Ms. Medina") passed away on October 13, 2019 due to complications from cervical cancer. [Doc. 1 at ¶ 170]. Prior to her death, Ms. Medina was in the custody of the CDOC, and while incarcerated, she discussed her cancer diagnosis with and requested treatment from, *inter alia*, Defendant Jennifer Samuels. [*Id.* at ¶¶ 8, 46, 51]. On May 20, 2020, the Estate

of Gabrielle Medina ("Plaintiff" or the "Estate") initiated this civil action, asserting two claims pursuant to 42 U.S.C. § 1983: (1) deliberate indifference to Ms. Medina's serious medical needs in violation of the Eighth and Fourteenth Amendments, for which Defendant Samuels was named as a Defendant; and (2) a deliberate indifference claim based on supervisory liability, which is not raised against Defendant Samuels. *See generally* [*id.*]. The Estate did not name the CDOC as a defendant in this matter. *See* [*id.*]. On December 17, 2020, this court dismissed a number of Defendants from this case upon ruling on three then-pending Motions to Dismiss. *See* [Doc. 97 at 31-32]. Defendant Samuels did not seek dismissal of Plaintiff's deliberate indifference claim against her, and this claim therefore remains. *See* [*id.*]. Relevant here, Plaintiff claims that Defendant Samuels's (and other Defendants') delay in obtaining cancer treatment for Ms. Medina was unconstitutionally deliberately indifferent, in violation of Ms. Medina's Eighth Amendment rights. *See, e.g.*, [Doc. 1 at ¶¶ 199-201, 205].

## PROCEDURAL BACKGROUND

As part of discovery in this case, the Estate served non-party CDOC with a subpoena duces tecum on October 1, 2021 (the "First Subpoena"). [Doc. 128 at 1; Doc. 128-1]. The First Subpoena requested that the CDOC produce, *inter alia*: (1) medical records of any and all patients seen by Defendant Samuels in which the patient had or was believed to have cancer which the CDOC has in its possession, including "any and all records of other providers;" (2) any and all consultation requests and appointment records related to those patients; and (3) any and all CDOC communications regarding those patients, consultation requests, and appointment records. [Doc. 128-1 at 4]. On October 15, 2021, the CDOC filed a motion to quash the First Subpoena (the "First Motion to Quash"), arguing that these three requests were improper because they sought privileged documents, were not relevant or proportional to the needs of the case, and were unduly

burdensome to the CDOC.  [Doc. 128 at 2].  This court granted the First Motion to Quash on

November 5, 2021.  *See* [Doc. 137].  The court concluded that the documents sought in the First

Subpoena—namely, non-party medical records—were not relevant to Plaintiff's claims, which

will require a jury to determine whether Defendant Samuels was deliberately indifferent to *Ms.*

*Medina's* medical needs, not the medical needs of any other inmate.  [*Id.* at 9-10].  Moreover, the

court found that there are "other, less burdensome means by which Plaintiff may obtain

information concerning Defendant Samuels's 'knowledge of the processes involved in cancer

treatment and/or coordination, the need for urgency and/or timeliness, and the risks/dangers

involved in failing to promptly act, as well as a lack of mistake regarding what a timely

consultation with and/or referral to oncologists looks like.'"  [*Id.* at 12 (quoting Doc. 130 at 7)].

The court proffered that Plaintiff could obtain the information sought through "narrowly drawn

written discovery requests or seeking kites from the CDOC which have raised issues concerning

the medical treatment from Defendant Samuels."  [*Id.* at 13].  Thus, the court concluded that the

scope of Plaintiff's requests in the First Subpoena exceeded the bounds of permissible discovery.

[*Id.*].

On December 2, 2021, the CDOC filed the instant Motion to Quash.  [Doc. 159].  The

CDOC represents that, on November 16, 2021, Plaintiff served a second subpoena duces tecum

(the "Second Subpoena") [Doc. 159-1] on the CDOC containing the following requests:

1. All notes or other entries by Jennifer Ross (a.k.a. Jennifer Samuels) between 2014 and the present regarding her consultation requests or referrals to outside providers submitted or considered for the purpose of cancer diagnosis, evaluation, and/or treatment.

2. All notes or other entries by Jennifer Ross/Samuel [sic] between 2014 and the present reflecting her knowledge and conduct related to any coordination of care between her/other DOC providers and outside providers for the evaluation/diagnosis/treatment of cancer.

3.  All notes or other entries by Jennifer Ross/Samuel [sic] between 2014 and the present reflecting her knowledge and conduct related to the timeliness or necessity of appointments for cancer evaluation/diagnosis/treatment.

4.  All notes or other entries by Jennifer Ross/Samuel [sic] between 2014 and the present reflecting her knowledge and conduct in requesting records from previous providers for the purpose of cancer evaluation/diagnosis/treatment and/or submitting a consultation request/referral for cancer evaluation/diagnosis/treatment.

5.  Any and all data/entries between 2014 and the present in which Jennifer Ross/Samuels was the "ordering provider" for consultation requests/referrals concerning cancer evaluation/diagnosis/treatment. The data/entries sought are limited to entries reflecting Jennifer Ross/Samuels as the "ordering provider" and signatory, the date of the entry, and her entries regarding: the "request type," the "service type," the "location" and/or "specialist" options selected, the "presumed diagnosis," the "priority" requested, the "procedure requested," and any other comments, notes, or entries concerning Item #1.

6.  Any and all communications regarding the information identified in the foregoing Items #1-#5.

[Doc. 159 at 2; Doc. 159-1 at 4].

In its Motion to Quash, the CDOC argues that "[w]hile these requests are worded differently, Plaintiff seeks the same records previously sought in the [First Subpoena]." [Doc. 159 at 3]. The CDOC moves this court to quash the Second Subpoena on the grounds that the Second Subpoena requests (1) are not relevant or proportional to the needs of this case; (2) are unduly burdensome to the CDOC; and (3) seek records that are protected by state and federal law. [*Id.* at 5-11]. This court ordered Plaintiff to respond to the Motion to Quash on or before December 9, 2021, and specifically instructed Plaintiff to "address the differences between its present subpoena requests and those at issue in the prior Motion to Quash [Doc. 128] and the concerns raised in this court's . . . Order on Motion to Quash [Doc. 137]." [Doc. 160].

Plaintiff responded to the Motion to Quash, arguing that (1) its Second Subpoena requests are relevant and proportional to the needs of this case; (2) its requests are not unduly burdensome

to the CDOC; and (3) the records sought are not protected by law and, in any event, any privacy concerns can be addressed by redactions.  [Doc. 162 at 3-13].  While the Estate generally asserts arguments as to why the documents requested in the Second Subpoena are relevant, the Estate does not specifically address the differences between the documents requested in the present Subpoena and the First Subpoena, as ordered by the court.  *See generally* [*id.*].  Nevertheless, Plaintiff disputed the CDOC's alleged burden in responding to the Second Subpoena.  As a result, this court ordered the CDOC to file a Reply, supported by admissible evidence, to address Plaintiff's contentions.  [Doc. 164].

The CDOC filed its Reply on December 27, 2021.  [Doc. 165].  In support of the Reply, the CDOC offers the declaration of Theresa Lynn Hiller, the CDOC's Clinical Services Support Manager, who acts as a records custodian for the CDOC. [Doc. 165-1 at ¶¶ 1-2].  Ms. Hiller states that prior to 2017, the CDOC predominantly maintained its medical records by patient, in paper format, without any "way to sort or filter such records by a specific provider."  [*Id.* at ¶ 5].  In order to find documents related to the 5-10 individuals who Defendant Samuels treated for cancer, the CDOC states it must "(1) know every inmate that was housed in the facilities where Ms. Ross worked during the relevant timeframe, (2) manually search the medical records of those inmates to see whether the inmates were seen by Ms. Ross for the purpose of cancer diagnosis, evaluation, and/or treatment, then (3) gather and redact the responsive records."  [*Id.*].  As of sometime in 2017, CDOC implemented a system called EOMIS to maintain medical records.  [*Id.* at ¶ 6]. EOMIS is searchable, and a search for Defendant Ross's consultation requests for offside treatment yielded 305 records.  [*Id.* at ¶ 10; Doc. 165-2].  Ms. Hiller then explains that from the search results, other than the ones that were specifically for oncology, it is unclear whether such requests are submitted for the purpose of cancer diagnosis, evaluation, and/or treatment.  [Doc.

165-2 at ¶ 10].  Finally, the CDOC reiterates its arguments that responding to the Second Subpoena is extremely burdensome.  [Doc. 165 at 7].  Fact discovery in this matter closed on December 13, 2021, and the deadline for filing dispositive motions is set for January 26, 2022.  [Doc. 120]; [Doc. 155 at 6].

The court considers the Parties' arguments below.

## LEGAL STANDARDS

### I.      Rule 26(b)

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery.  Fed. R. Civ. P. 26(b)(1).  The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id.*  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Moreover, in considering whether the discovery sought is proportional, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  *Id.*

In addition, Rule 26(b)(2) governs limitations on the extent of discovery.  Under this Rule, the court, "[o]n motion or on its own, . . . must limit the frequency or extent of discovery otherwise allowed" if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).  "This rule incorporates the Rule 26(b)(1) proportionality standard, which the court should always consider in resolving discovery disputes."

*Atl. Specialty Ins. Co. v. Midwest Crane Repair, LLC*, No. 20-4013-JAR-ADM, 2020 WL 5118067, at *5 (D. Kan. Aug. 31, 2020).

The Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations. Advisory Comm. Notes to Fed. R. Civ. P. 26(b)(1). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 350 (D. Colo. 2004) (citations omitted). Conversely, "when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Cunningham v. Standard Fire Ins. Co*., No. 07-cv-02538-REB-KLM, 2008 WL 2668301, at *1 (D. Colo. July 1, 2008). The court may also consider the fact that the discovery sought is directed at a nonparty, and in such case, the ordinary burden imposed under Rule 26 is generally greater. *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998).

## II.    Rule 45

A subpoena served on a third party pursuant to Rule 45 of the Federal Rules of Civil Procedure is considered discovery within the meaning of the Federal Rules. *Rice v. United States*, 164 F.R.D. 556, 556-57 (N.D. Okla. 1995). Accordingly, a Rule 45 subpoena must satisfy the same standards that govern discovery between the parties, i.e., to be enforceable, it must seek information that is relevant to a party's claims or defenses and that is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). On a timely motion, the court must quash or modify a subpoena

that, *inter alia*: (1) fails to allow a reasonable time to comply; (2) requires the disclosure of privileged or other protected matter, if no exception or waiver applies; (3) subjects a person to undue burden; or (4) requires the disclosure of a trade secret or other confidential research, development, or commercial information.  Fed. R. Civ. P. 45(d)(3)(A), (d)(3)(B).

## ANALYSIS

As discussed above, Rule 26 of the Federal Rules of Civil Procedure provides that a party may discover any nonprivileged matter relevant to the party's claim or defense, so long as it is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Larson v. Larson*, 687 F. App'x 695, 707 (10th Cir. 2017) (unpublished).  The CDOC argues that the Subpoena should be quashed because the requested documents not relevant or proportional to the needs of this case, would be unduly burdensome for the CDOC to produce, and are protected by state and federal law.  [Doc. 159].  The court considers these arguments below.

## I.    Relevancy and Proportionality

Relying on this court's order on the First Motion to Quash, *see* [Doc. 159 at 5-7], the CDOC argues that the requested records are not relevant or proportional to the needs of this case because the "medical records of dozens or hundreds of other inmates, who are not parties to the case, are not relevant to whether Defendant Samuels was deliberately indifferent to Ms. Medina's serious medical needs."  [*Id.* at 5].  Moreover, the CDOC asserts that even if the record search would produce relevant records, it is not proportional to the needs of the case because producing responsive records would be "extremely labor intensive on the part of CDOC, all for information that would be, at best, minimally relevant." [*Id.* at 7].  In response, Plaintiff argues that its requests are narrowly tailored because they seek "only documentation and notes reflecting [Defendant Samuels's] knowledge and actions specifically regarding her knowledge and actions of

8

referrals/appointments for cancer patients, the records needed, and communications with outside providers about cancer care," but do not seek patient medical records that are unrelated to Defendant Samuels's knowledge of cancer care.  [Doc. 162 at 3-4].

More specifically, Plaintiff asserts that referrals to outside medical providers, which are documented in "consultation requests," are "certain" to contain information pertaining to Defendant Samuels's knowledge of the appropriate providers for referral and the urgency of such referrals for cancer treatment.  [*Id.* at 5].  Moreover, Plaintiff references Defendant Samuels's notes related to Ms. Medina's medical care—in particular, notes in which Defendant Samuels noted on August 20, 2018 that Ms. Medina's options were to "do nothing" or "provider will submit a consult to CHP for an appointment at [Rocky Mountain Cancer Center ("RMCC")]"[1] and that "likely trajectory for care" was "[Denver Health] for surgery, RMCC for chemo/radiation if needed," *see* [Doc. 162-5 at 2, 4]—and asserts that Defendant Samuels "likely made such notes for her other 5-10 patients that reflect her knowledge and actions regarding getting cancer treatment for them." [*Id.* at 5-6].

***Relevancy Standards***.  Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action.  Fed. R. Evid. 401.  The court "broadly construes relevancy, and a request for discovery should be considered relevant if it is possible that the information sought may be relevant to the claim or defense of any party."  *Church v. Dana Kepner Co.*, No. 11-cv-02632-CMA-MEH, 2013

---

[1] The Estate alleges in its Complaint that the Denver Women's Correctional Facility, wherein Ms. Medina was housed, does not have sufficient resources to evaluate or treat cancer patients, and inmates must be treated for cancer at RMCC or by another outside specialist.  [Doc. 1 at ¶ 28]. The Estate further alleges that Denver Health could not provide cancer treatment to CDOC inmates, including Ms. Medina, because "Denver Health does not have a contract with CDOC for cancer treatment."  [*Id.* at ¶ 128].

WL 24437, at *4 (D. Colo. Jan. 2, 2013).  But "when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Cunningham*, 2008 WL 2668301, at *1.  Here, the court does not find that the relevancy of "all notes or other entries" by Defendant Samuels "between 2014 and the present" related to her consultation requests, outside-provider referrals, coordination of cancer care, and records requests related to the care of non-party inmates and communications regarding the aforementioned items is readily apparent on the face of the Subpoena.  Thus, it is Plaintiff's burden to demonstrate the relevancy of the requested materials.

***Subjective Deliberate Indifference*.**  Plaintiff argues that the requested discovery is relevant to the subjective inquiry necessary to succeed on its Eighth Amendment deliberate indifference claim against Defendant Samuels.  [Doc. 162 at 4 ("This information is relevant to show Defendant Samuels['] knowledge from her treatment of inmates with cancer, her knowledge of the processes involved, and lack of mistake regarding her responsibilities to timely obtain records and schedule patients to outside providers.")].  As set forth above, the Estate alleges in its Complaint that Defendant Samuels was unconstitutionally indifferent to Ms. Medina's serious medical needs because Defendant Samuels knew that Ms. Medina had cancer and refused to refer her to an oncologist who could treat her and/or otherwise ignored Ms. Medina's worsening symptoms. *See, e.g.*, [Doc. 1 at ¶¶ 52-53, 56-57, 65-66, 200-01].  In its Response to the Second Motion to Quash, the Estate argues that it "seeks records regarding the treatment of other cancer patients by Defendant Samuels in order to assess the knowledge, opportunity, and lack of mistakes of Defendant Samuels in treating Ms. Medina." [Doc. 162 at 7].  Specifically, Plaintiff posits that the requested documents would reflect that Defendant Samuels "would likely have encountered

information indicating she must refer cancer patients to RMCC (and not Denver Health)."  [Doc. 162 at 6].

To succeed on an Eighth Amendment deliberate indifference claim, the plaintiff must establish that the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).  To make such a showing, the plaintiff must demonstrate that (1) the medical need was sufficiently objectively serious (the "objective prong"); and (2) the official knew of and disregarded an excessive risk to the plaintiff's health or safety (the "subjective prong").  *Id.*  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citation omitted).

**Plaintiff's Requested Records**.  In its Order on the First Motion to Quash, the court concluded that the medical records of non-party cancer patients are not relevant to the subjective prong of Plaintiff's Eighth Amendment claim against Defendant Samuels because Defendant Samuels's treatment of other inmates did not bear on whether Defendant Samuels was deliberately indifferent in Ms. Medina's case.  [Doc. 137 at 9-10].  In so doing, the court cited a long line of cases finding that such non-party records are not relevant in this context.  *See* [*id.* at 10-11]; *see also Coats v. Chaudhri*, No. 1:13-cv-02032-BAM (PC), 2016 WL 1046233, at *4 (E.D. Cal. Mar. 16, 2016); *Awe v. Clarke*, No. 7:13-cv-00143, 2014 WL 948880, at *2 n.2 (W.D. Va. Mar. 11, 2014); *Dugan v. Middlebrooks*, No. 5:10-cv-367-OC-10PRL, 2014 WL 3894299, at *3 (M.D. Fla. Aug. 8, 2014); *Thomas v. Loftin*, No. 3:08-cv-101MJR, 2010 WL 234998, at *1 (S.D. Ill. Jan. 15,

2010); *Oliver v. Calderon*, No. 6:17-cv-1792-ORL-31TBS, 2021 WL 4528127, at *3 (M.D. Fla. Feb. 24, 2021).

This court understands that Plaintiff seeks to glean very particular information from the requested documents, i.e., the knowledge that Defendant Samuels had, based on her prior 5 to 10 cancer cases, that she had to act quickly when obtaining medical records and that she had to refer cancer patients to RMCC instead of Denver Health. This court agrees with the general proposition that such information may be relevant to Defendant Samuels's knowledge in treating Ms. Medina. Nevertheless, as drafted, the topics included in the Second Subpoena are not proportional to the needs of this case when considering the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

First, there is no doubt that the issues at stake in this action, i.e., the care of an incarcerated person and the allegations that Defendants were deliberately indifferent to an incarcerated person's medical needs, are important not only to Plaintiff, but to incarcerated individuals and to the State. But this court finds that the burden of full compliance with the Second Subpoena is outweighed by the attendant burden. First, the court finds that the Estate has not sufficiently articulated a material difference between the records requested in the First Subpoena and those requested in the instant Subpoena—despite the express instruction by the court. [Doc. 160]. Second, while Plaintiff suggests, and the court agrees, that the Second Subpoena requests appear to be generally narrower in scope, *see* [Doc. 162 at 3-4 (asserting that the Subpoena "does not seek the entirety of patient medical records or records that are unrelated to Defendant Samuels['s] knowledge of cancer care")], the Estate nevertheless concedes that the records it seeks are, in fact, portions of

non-party patient medical files, *see* [*id.* at 5, 11-12], and as such, contain information wholly unrelated to issue of Defendant Samuels's subjective knowledge of whether Denver Health, versus another facility, was an appropriate referral for Ms. Medina. And while the present Subpoena requests may be narrower than the previous, the Second Subpoena nevertheless seeks a broad range of documents: *all* notes or other entries by Defendant Samuels, from 2014 to the present, that concern the following with respect to inmate cancer evaluation, diagnosis, and treatment: (1) consultation requests or referrals to outside providers; (2) the coordination of care with other CDOC providers or outside providers; (3) the timeliness or necessity of appointments; and (4) requesting records or submitting consultation requests or referrals; as well as (5) "all data and entries" in which Defendant Samuels was the ordering provider for consultation requests or referrals; and (6) any and all communications regarding the following. *See* [Doc. 159-1 at 4].

Moreover, the court finds that Plaintiff's attempts to narrow its previous requests in the First Subpoena do not render the documents subject to its present requests sufficiently proportional to this matter. For example, the Estate argues that the records it seeks are relevant to determining Defendant Samuels's knowledge of appropriate providers for referral and the urgency of such referrals, so as to show "the subjective awareness of Defendant Samuels *at the time Ms. Medina was under her care.*" [Doc. 162 at 5, 6 (emphasis added)]. But Plaintiff alleges that Ms. Medina was under Defendant Samuels's care in 2018 and 2019, *see, e.g.*, [Doc. 1 at ¶¶ 51, 55, 60, 65, 78, 102], and does not explain in its Motion why notes or other records after 2019 would reflect Defendant Samuels's knowledge at the time she was actually treating Ms. Medina. *See generally* [Doc. 162]; *cf. Phillips v. Ottey*, No. CV DKC 14-0980, 2016 WL 6582647, at *5 (D. Md. Nov. 7, 2016) (where requested medical records did not concern the treatment at issue in the plaintiff's complaint, they were not relevant to the case or within the scope of discovery). While Plaintiff

13

now frames its request as those records "reflecting [Defendant Samuels's] knowledge and conduct" related to cancer treatment, diagnosis, evaluations, referrals, record requests, and consultations, [Doc. 159-1 at 4], as the CDOC argues in its Reply, seemingly *all* notes, entries, and records created by Defendant Samuels would "reflect[] her knowledge and conduct;" thus, this attempt at limitation appears to be inconsequential.

The Second Subpoena still requests, similar to the First Subpoena, medical records of non-party inmates, and the Estate cites no case law finding that a provider's notes or entries related to the care of other patients are relevant to the determination of whether that provider was deliberately indifferent in the care of a separate specific patient, even to show the defendant's knowledge at the time the defendant treated the patient. *See generally* [*id.*]. Indeed, as set forth above, the consensus view is that such outside-patient materials are not relevant to a party's Eighth Amendment claim. *See* [Doc. 137 at 10-11]. Further, it does not appear that Plaintiff addresses the relative access to relevant information regarding Defendant Samuels's knowledge by seeking this information through any other mechanism, such as requesting production of policies, procedures, directives, manuals, provider directories, or training materials regarding referrals to outside providers from the CDOC. *See* [Doc. 128-1; Doc. 159-1]. Nor does it appear that Plaintiff subpoenaed RMCC, which would also have records of referrals from the CDOC.

Accordingly, the court finds that the Estate has not met its burden of demonstrating that the records as requested in the Second Subpoena and the communications related thereto are proportional to the needs of this case.

## III. Rule 26 Considerations

In its earlier Order, the court found that the First Subpoena requests exceeded the bounds of Rule 26(b)(2)(C), which provides that a court must, "[o]n motion or on its own," limit the extent

of discovery if the court finds that the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The court found that there were other, less burdensome means, such as "narrowly drawn written discovery requests or seeking kites from the CDOC which have raised issues concerning the medical treatment from Defendant Samuels," through which Plaintiff could obtain the information sought, and determined that quashing the Subpoena in part was appropriate under Rule 26(b)(2)(C). [Doc. 137 at 12-13].

The court generally concludes the same here. First, Plaintiff does not argue or explain why the less burdensome means suggested by the court, or any other less onerous discovery requests, would be insufficient to obtain the information it seeks, *see generally* [Doc. 162], despite this court specifically directing Plaintiff to address the concerns raised in this court's Order on the Motion to Quash. [Doc. 160]. Moreover, in its Response, the Estate references and attaches some of Defendant Samuels's notes related to Ms. Medina's medical care, which show, *inter alia*, that on August 20, 2018, Defendant Samuels noted that Ms. Medina's options were to "do nothing" or for Defendant Samuels to submit a consult for an appointment at RMCC, [Doc. 162-5 at 4], and that Ms. Medina's likely trajectory for care was "RMCC for chemo/radiation if needed." [*Id.* at 2]. But there is no explanation as to how these documents are suggestive that Defendant Samuels ignored the fact that the proper referral would be to RMCC, rather than Denver Health. Further, the notes state that Defendant Samuels would submit a consult for an appointment at RMCC "once . . . records received or within a month if no records received." [*Id.* at 4]. The Estate does not explain why these notes are insufficient to demonstrate Defendant Samuels's knowledge prior to October 2018 that, for example, cancer patients housed in the CDOC were to be treated at RMCC.

*See generally* [Doc. 162].[2]  Plaintiff has thus not "convince[d] the Court that [it cannot] obtain the information [it seeks] from another source,"  *Denver Homeless Out Loud v. Denver*, No. 20-cv-02985-WJM-SKC, 2020 WL 7230641, *3 (D. Colo. Dec. 8, 2020) (granting motion to quash), particularly where the subjective prong of a deliberate indifference claim may be demonstrated by circumstantial evidence, including the obviousness or seriousness of the risk involved, *Farmer*, 511 U.S. at 842, or a violation of DOC protocols.  *Mata*, 427 F.3d at 758.  Finally, despite challenging the burden articulated by the CDOC, Plaintiff does not address either the

For these reasons, the court finds no reason to depart generally from its earlier conclusion that broad requests for non-party medical records, even if narrowed to "[a]ll notes or other entries by [Defendant Samuels] between 2014 and the present" and to cancer-specific treatment, is the least burdensome means through which Plaintiff may obtain the information it seeks.  *See Franklin v. United States*, No. 12-1167 KBM/LFG, 2013 WL 11336864, at *8 (D.N.M. Aug. 28, 2013) (sustaining objections to request for production where the request was "exceedingly broad" and where the information sought could "be obtained from other sources that [were] less burdensome").[3]

However, this court notes that the CDOC's search yielded three instances before October 13, 2019 where Defendant Samuels referred a patient to oncology: (1) May 2, 2018 [Doc. 165-2 at 8]; (2) December 20, 2017 [*id.* at 10]; and (3) November 1, 2017 [*id.* at 11].  To the extent that these consultation requests might yield information regarding Defendant Samuels's knowledge

[2] Moreover, as noted by this court in its earlier Order, [Doc. 137 at 13 n.6], Plaintiff's red-lined proposed Amended Complaint appears to demonstrate that Plaintiff has sought and obtained information related to Defendant Samuels's knowledge through discovery. *See, e.g.*, [Doc. 131-2 at ¶¶ 45-47, 104, 213, 239-40, 254-55, 292, 296].

[3] Based on these rulings, the court does not pass on the CDOC's argument that the records requested are protected by state and federal law.  *See* [Doc. 159 at 11].

with respect to applicable procedures and/or referral facilities prior to her treatment of Ms. Medina, this court concludes that **the limited production of these three consultation reports alone should be made by the CDOC no later than January 14, 2022, redacted of personally identifying health information and/or information designated under the Protective Order [Doc. 78] if appropriate.**

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   The Nonparty CDOC's Motion to Quash Plaintiff's Subpoena to Produce Documents [Doc. 159] is **GRANTED IN PART and DENIED IN PART**;

(2)   The CDOC shall **PRODUCE** the consultation requests for oncology made by Defendant Jennifer Samuels dated May 2, 2018; December 20, 2017; and November 1, 2017 as reflected at [Doc 165-2 at 8, 10, 11] **no later than January 14, 2022**, redacted for personally identifying health information and/or information designated under the Protective Order [Doc. 78] if appropriate;

(3)   All other discovery **REMAINS CLOSED** and all deadlines, including the forthcoming dispositive motions deadline, **REMAIN SET**; and

(2)   The Second Subpoena [Doc. 159-1] is hereby **QUASHED for all other purposes**.

DATED:  January 7, 2022                              BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge