IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01443-NYW

THE ESTATE OF GABRIELLE MEDINA,

    Plaintiff,

v.

JENNIFER ROSS SAMUELS,
TIFFANY NEARY,
RANDOLPH MAUL, and
JILL KEEGAN,

    Defendants.

## ORDER DENYING MOTION TO AMEND

Magistrate Judge Nina Y. Wang

This matter is before the court on Plaintiff's Motion to Amend Complaint (the "Motion" or "Motion to Amend") [Doc. 131] filed on October 25, 2021 by Plaintiff, the Estate of Gabrielle Medina ("the Estate" or "Plaintiff"). The undersigned Magistrate Judge fully presides over this matter pursuant to the Parties' Consent, [Doc. 53], and the Order of Reference dated September 1, 2020. [Doc. 55]. For the reasons set forth below, the Motion to Amend is respectfully **DENIED**.

## BACKGROUND

This court has set out the factual background of this case in detail, *see* [Doc. 97], and does so again here only as necessary for purposes of the instant Motion. On or about March 10, 2017, Gabrielle Medina ("Ms. Medina") was diagnosed with stage IB1 cervical cancer. [Doc. 1 at ¶ 39].[1] Ms. Medina was arrested for violations of her parole and misdemeanor offenses on or about

---

[1] The court draws the following facts from the Complaint and Jury Demand (the "Complaint"). *See* [Doc. 1].

January 10, 2018. [*Id.* at ¶ 41]. Upon the entry of a guilty plea, Ms. Medina was placed in the custody of the Colorado Department of Corrections ("CDOC") on or about May 8, 2018, [*id.* at ¶ 46], and she arrived at Denver Women's Correctional Facility ("DWCF") on or about May 9, 2018. [*Id.* at ¶ 47]. The Estate alleges that, while Ms. Medina was confined at DWCF, she received inadequate medical care from CDOC officials. More specifically, despite Ms. Medina disclosing her cancer diagnosis to CDOC nurses, requesting cancer treatment, submitting kites as to the status of her cancer treatment, and complaining of worsening symptoms, *see, e.g.*, [*id.* at ¶¶ 51, 59, 65, 68, 76, 79], CDOC medical providers failed to provide Ms. Medina treatment or refer her to other treatment. *See, e.g.*, [*id.* at ¶¶ 50, 53, 57, 64, 69, 107, 109-10, 114-16, 130-35].

On July 27, 2019, Ms. Medina was transferred to Swedish Hospital, at which point doctors gave Ms. Medina six to eighteen months to live. [*Id.* at ¶ 142]. Thereafter, CDOC medical providers continued to provide Ms. Medina with inadequate treatment. *See* [*id.* at ¶¶ 157-62]. Ms. Medina's health deteriorated to the point that she required further hospitalization until the Parole Board approved her release on or about October 1, 2019. *See* [*id.* at ¶¶ 163-69]. Ms. Medina passed away on October 13, 2019. [*Id.* at ¶ 170].

Plaintiff initiated this civil action on May 20, 2020, asserting two claims pursuant to 42 U.S.C. § 1983: (1) deliberate indifference to Ms. Medina's serious medical needs in violation of the Eight and Fourteenth Amendments against Defendants Elle Heeg Miller, Jennifer Ross Samuels, Alex Herbert, Tiffany Neary, Kimberly Retallack, Amy Dixon, Stephanie Schrag, Randolph Maul, Leto Quarles, and Jill Keegan ("Claim One"); and (2) a deliberate indifference claim based on supervisory liability against Defendants Tina Cullyford, Schrag, Dixon, Quarles, Maul, and Ryan Long ("Claim Two"). *See generally* [*id.*].

Defendants Quarles and Miller each filed individual motions to dismiss, *see* [Doc. 36; Doc.

42] and Defendants Cullyford, Herbert, Neary, Dixon, Schrag, Maul, Keegan, and Long filed a joint motion to dismiss. [Doc. 58].² This court granted Defendant Miller's motion to dismiss, which resulted in her dismissal from this action. [Doc. 97 at 31]. In addition, the court granted in part and denied in part Defendant Quarles's motion to dismiss and dismissed Claim Two as to Defendant Quarles. [*Id.*]. Finally, the court granted in part and denied in part the CDOC Defendants' motion to dismiss, *see* [*id.*], which resulted in the dismissal of Claim One as to Defendants Dixon, Herbert, and Schrag and the dismissal of Claim Two as to Defendants Dixon, Schrag, Cullyford, and Long. [*Id.* at 31-32]. As a result of the court's order, Plaintiff's Claim One remained as to Defendants Samuels, Neary, Retallack, Maul, Quarles, and Keegan, and Claim Two remained as to Defendant Maul.³

Meanwhile, this court entered the Scheduling Order in this case on September 14, 2020. [Doc. 73]. The court set a deadline for joinder of parties and amendment of pleadings for October 29, 2020. [*Id.* at 15]. In addition, the discovery deadline was set for August 13, 2021 and the dispositive motion deadline was set for September 27, 2021. [*Id.*]. After multiple requests amendments to the Scheduling Order, *see* [Doc. 108; Doc. 109; Doc. 111; Doc. 112; Doc. 118; Doc. 120; Doc. 126; Doc. 127], the discovery deadline was set for December 13, 2021; the Rule 702 motions deadline was set for December 13, 2021; and dispositive motions deadline was set for January 26, 2022. [Doc. 120 at 1-2]. On November 23, 2021, this court granted in part and denied in part Plaintiff's Motion to Amend Scheduling Order to Provide for Additional Depositions, *see* [Doc 142], and re-set the expert discovery and Rule 702 motions deadline to

---

² Defendants Samuels and Retallack answered the Complaint. [Doc. 43; Doc. 76].

³ Defendant Ratellack was dismissed as a Defendant on April 20, 2021, [Doc. 106], and Defendant Quarles was dismissed as a Defendant on November 15, 2021. [Doc. 146].

3

January 14, 2022. [Doc. 155 at 6]. The fact discovery deadline remained set, and fact discovery closed as scheduled on December 13, 2021. *See generally* [*id.*].

On October 25, 2021, Plaintiff filed the instant Motion to Amend, seeking leave to file an amended complaint. [Doc. 131]. In support of its Motion, Plaintiff states that it has discovered new evidence concerning a "[l]ack of policies, procedures, practices, or clinical standards and non-existent or inadequate oversight, direction, review, supervision or management of care, and training of [CDOC] providers" which Plaintiff asserts "has created a health care system completely lacking in any planning, management, or oversight of cancer treatment." [*Id.* at 1-2]. Plaintiff appears to seek leave to amend to add these additional factual details to its pleading. *See* [*id.*]. In addition, Plaintiff seeks to amend its Complaint to add a negligence claim against Defendant Samuels. [*Id.* at 2].[4] Plaintiff claims that, at the time it filed this lawsuit, it did not know that Defendant Samuels was an independent contractor for the CDOC and thus "subject to common law negligence claims," and further represents that it has learned new information during discovery which has established that Defendant Samuels's conduct may be better suited for a negligence claim, rather than a deliberate indifference claim. [*Id.*]. Finally, although the Motion to Amend does not expressly discuss the addition of new Defendants, *see generally* [*id.*], the court notes that the proposed Amended Complaint raises a claim against individuals not previously named in this case—Camilla Smith, William Frost, Darren Lish—and also attempts to add back in a claim

---

[4] In the Motion to Amend, Plaintiff indicates that she intends to assert a negligence claim against Defendant Quarles. *See* [Doc. 131 at 2]. However, after filing the Motion to Amend, Plaintiff filed a Stipulated Motion for Dismissal of Defendant Quarles, in which it moved for dismissal of its claims against Defendant Quarles with prejudice. [Doc. 145 at 1]. This court granted that motion, and the claims against Defendant Quarles were dismissed with prejudice. [Doc. 146]. Due to the dismissal of Defendant Quarles with prejudice, the court finds that Plaintiff seeks to add a negligence claim against only Defendant Samuels.

4

against previously-dismissed Defendant Cullyford. *See* [Doc. 131-2 at 1, 69].

All remaining Defendants oppose the Motion to Amend. *See* [Doc. 147 (Defendants Neary, Maul, and Keegan); Doc. 148 (Defendant Samuels)].[5] Defendants Neary, Maul, and Keegan (the "CDOC Defendants") argue that (1) amendment is futile because the statute of limitations expired 12 days before the Motion to Amend was filed; (2) Plaintiff unreasonably delayed the commencement of discovery and the filing of the Motion to Amend; and (3) Plaintiff has failed to establish "any personal participation of Drs. Lish and Frost, Ms. Cullyford, and Ms. Smith in the treatment of Decedent Medina."[6] [Doc. 147 at 2-3]. In addition, Defendant Samuels opposes the Motion on the grounds that (1) Plaintiff has failed to establish that amendment is warranted under Rule 16(b) because Plaintiff unduly delayed seeking amendment and the proposed amendments do not cure the pleading deficiencies in the Complaint; and (2) the statute of limitations has run with respect to any negligence claim against Defendant Samuels. [Doc. 148 at

---

[5] Defendant Samuels's Response fails to comply with this court's Practice Standards, which require that all filings be double-spaced. *See* NYW Civil Practice Standards § 10.1. Because Defendant Samuels's non-compliance did not appear to be an attempt to circumvent the undersigned's page limitations, the court declined to strike the Response. However, all Parties are hereby advised that the failure to comply with the Practice Standards may result in this court striking any filing without further notice and without substantive consideration by the court.

[6] The court questions whether these Defendants have standing to raise futility arguments on behalf of non-parties. *See Riley v. Clark*, No. 4:20-cv-325, 2021 WL 1313528, at *6-7 (M.D. Pa. Apr. 8, 2021) (finding that current defendants lacked standing to assert futility arguments on behalf of non-party proposed defendants); *Clark v. Hamilton Mortg. Co.*, No. 1:07-cv-252, 2008 WL 919612, at *2 (W.D. Mich. Apr. 2, 2008) (rejecting defendants' opposition to motion to amend where objecting defendants "cited [no] authority that would . . . authorize present parties who are unaffected by the proposed amendment to assert claims of futility on behalf of the proposed new defendant"); *but see Speedsportz, LLC v. Menzel Motor Sports, Inc.*, 07-cv-624-TCK-SAJ, 2008 WL 4632726, at *1 (N.D. Okla. Oct. 17, 2008) (rejecting argument that a named defendant lacks standing to object to the addition of another defendant). While counsel of record previously represented Ms. Cullyford prior to her dismissal, *see* [Doc. 10], there is no indication that counsel is authorized to represent the other non-parties. However, because the court does not address this argument in this Order, the court need not decide the issue.

6, 8-9]. Plaintiff has since filed a combined Reply. [Doc. 161]. Because the Motion is ripe for disposition, I consider the Parties' arguments below.

## LEGAL STANDARD

Plaintiff filed the Motion to Amend after the expiration of the deadline for amendment of pleadings as specified in this court's Scheduling Order. Therefore, this court considers the Motion pursuant to a two-step inquiry. First, the court reviews whether the moving party demonstrates good cause for amendment pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Assoc.*, 771 F.3d 1230, 1242 (10th Cir. 2014); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518 (10th Cir. 1990). Next, the court weighs whether the amendment should be allowed pursuant to Rule 15(a). *Gorsuch*, 771 F.3d at 1242; *cf. Fernandez v. Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000) (applying only Rule 15 when the deadline set for amendment in the Scheduling Order has not yet passed).

Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). This burden is satisfied, for example, when a party learns of new information through discovery, or when the governing law has changed. *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). The party seeking an extension is normally expected to show at least good faith on its part and some reasonable basis for not meeting the deadline. *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan.

1995).

By contrast, Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). A general presumption exists in favor of allowing a party to amend its pleadings, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), and the non-moving party bears the burden of showing that the proposed amendment is improper. *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv. Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). Whether to allow amendment is within the trial court's discretion. *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978-79 (10th Cir. 1996).

## ANALYSIS

First, the court must determine if amendment of the Scheduling Order is appropriate under Rule 16(b). Aside from referencing the Rule 16(b) good-cause standard, *see* [Doc. 131 at 3, 7], Plaintiff makes no express argument in the Motion that good cause exists for amendment under Rule 16(b). *See generally* [*id.*]. In addition, while the court does not entertain arguments raised for the first time in a reply brief, *see United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011), the court notes that Plaintiff does not raise any Rule 16(b) argument in its Reply, either. *See generally* [Doc. 161]. Typically, the failure to assert an argument pursuant to Rule 16(b) is a sufficient basis alone to deny a motion to amend. *See Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (affirming denial of a motion to amend the scheduling order where the movant "made absolutely no arguments to show good cause for late amendment of the pleadings") (quotation omitted); *Doe v. Intermountain Healthcare, Inc.*, No. 2:18-cv-00807-RJS-

7

JCB, 2020 WL 6743256, at *3 (D. Utah Nov. 17, 2020).

However, the Estate does assert that the proposed amendments are "predicated on information that could only be learned in discovery," and further indicates that it was only able to obtain this information "through extensive written discovery and a multitude of depositions, including 30(b)(6) depositions of the [CDOC] and other employees." [Doc. 131 at 7-8]. Moreover, Plaintiff argues that, because its proposed amendments are based on newly discovered evidence, it has not unduly delayed seeking amendment. [*Id.* at 8]. The Tenth Circuit has identified a "rough similarity between the 'good cause' standard of Rule 16(b) and [the] 'undue delay' analysis under Rule 15." *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). Thus, although Plaintiff is represented by counsel and is not entitled to liberal construction of its filings, *Ward v. Express Messenger Sys., Inc.*, No. 17-cv-02005-NYW, 2020 WL 6828105, at *2 n.4 (D. Colo. July 21, 2020), the court will construe Plaintiff's undue-delay argument as asserting good cause for amendment under Rule 16(b).

As a preliminary matter, the court notes that, while Plaintiff generally sets forth certain dates on which certain discovery events occurred, *see, e.g.*, [Doc. 131 at ¶¶ 11-12, 14], and broadly describes what it asserts is newly learned information, *see, e.g.*, [*id.* at ¶¶ 15, 17], Plaintiff fails to set forth in sufficient detail exactly what information it learned and when it learned such information, which frustrates this court's ability to efficiently rule on the Motion and cuts against a finding of good cause. *See Seale v. Peacock*, No. 19-cv-03559-KMT, 2021 WL 927632, at *3 (D. Colo. Mar. 11, 2021) (finding that the moving party did not demonstrate good cause by stating that it "recently learned of new factual information" where the briefing was "devoid of any specific explanation" of when it discovered the new information); *see also Bauer v. Crete Carriers Corp.*, No. 18-cv-01536-PAB-SKC, 2019 WL 7290939, at *5 (D. Colo. Nov. 1, 2019) (finding that

8

moving parties did not demonstrate good cause for late amendment when they "[did] not elucidate on what it is they learned or when.").

Plaintiff does, however, provide some dates from which the court can attempt to ascertain when Plaintiff learned of the information upon which it bases its request to amend. Plaintiff states that it was "required" to serve a subpoena duces tecum on the CDOC to obtain documents relevant to this case, and did so on April 27, 2021. [Doc. 131 at ¶¶ 10-11]. Plaintiff does not represent when the CDOC responded to the subpoena nor describe what discovery the subpoena request yielded, but states that it requested "extensive documents," *see* [*id.*], and the return date on the subpoena is listed as May 10, 2021. *See* [Doc. 131-3 at 1]. Moreover, Plaintiff states that, on June 14 and 15, 2021, Plaintiff took a Rule 30(b)(6) deposition of the CDOC, at which time the CDOC produced "for the first time" organizational charts that identified Chief Medical Officers Frost, Lish, and Maul as the Chief Medical Officers "during the timeframes relevant to the Complaint," which Plaintiff asserts was the first time that Drs. Frost and Lish had been mentioned during discovery. [Doc. 131 at ¶ 13]. Further, Plaintiff represents that Defendants' supplemental discovery responses, which were produced pursuant to this court's July 8, 2021 order requiring supplementation, *see* [Doc. 121], identified Dr. Frost and Lish as the relevant Chief Medical Officers during the relevant timeframes and identified Tina Cullyford as Defendant Keegan's and Defendant Neary's supervisor. [Doc. 131 at ¶¶ 22-23].[7]

In addition, Plaintiff represents that in June, July, and August of 2021, it conducted approximately eleven depositions, taken of both Defendants and non-parties. [*Id.* at ¶ 14].

---

[7] Plaintiff does not provide the date on which it received these supplemental responses. *See* [Doc. 131]. However, the court's order directed Defendants to produce the supplemental responses by July 15, 2021. [Doc. 121 at 1]. Thus, the court assumes that Plaintiff received this information no later than July 15, 2021.

According to Plaintiff, "[t]hrough the course of reviewing extensive documents received from the [CDOC] in response to Plaintiff and the 30(b)(6) depositions of the [CDOC], as well as numerous depositions," Plaintiff learned new information which necessitates amendment of the Complaint. [*Id.* at ¶ 15]. Plaintiff further states that, due to this newly discovered information, it consulted with an expert "who ultimately provided an expert report on September 16, 2021 explaining these gross institutional failures by supervisors and negligence by Defendants." [*Id.* at ¶ 16]. Plaintiff argues that it "promptly filed this Motion after necessary depositions were completed and consultation with an expert on this newly discovered information." [*Id.* at 8].

In opposing Plaintiff's Motion, the CDOC Defendants argue that Plaintiff "wait[ed] months after obtaining the information needed to amend its Complaint," which warrants denial of the Motion. [Doc. 147 at ¶¶ 26, 38]. Defendant Samuels raises a similar argument, arguing that Plaintiff knew of Defendant Samuels's employment status since this information was disclosed on September 19, 2020, and yet unduly delayed seeking leave to amend. [Doc. 148 at 6-7]. In Reply, Plaintiff raises extensive arguments asserting that it did not unduly delay seeking amendment, providing substantial detail in support of its argument that Defendants' collective discovery practices have been generally deficient in this case, suggesting that any delays in discovering this relevant information can be attributed to Defendants. *See, e.g.*, [Doc. 161 at 2-6]. Such arguments are likely in response to Defendants' assertions suggesting that Plaintiff is to blame for any discovery delays in this case. *See, e.g.*, [Doc. 147 at ¶ 5; Doc. 148 at ¶ 9]. The court finds it may rule on the instant Motion without passing on any Party's conduct throughout the course of discovery in this case.[8] Indeed, even if Defendants failed to provide satisfactory discovery

---

[8] This court has held numerous discovery dispute conferences between the Parties in this case. *See* [Doc. 121; Doc. 125; Doc. 135; Doc. 136; Doc. 143; Doc. 156]. Thus, the Parties are well-apprised

10

answers, *see* [Doc. 161 at 3-5], and even if it was difficult for Plaintiff to schedule depositions in this case, *see* [*id.* at 8-9], Plaintiff's assertions do not explain why Plaintiff waited months from when Plaintiff *itself* concedes that it learned of certain information to seek leave to amend the Scheduling Order and the Complaint.

The "good cause" provision "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (unpublished). This good-cause burden may be satisfied where new information is learned during discovery. *Gorsuch*, 771 F.3d at 1240. In determining whether newly discovered information constitutes good cause for amendment of the Scheduling Order, the relevant "question is when the [moving party] first learned of new information that it sought to include in its pleadings." *Fountain Valley Inv. Partners, LLC v. Cont'l W. Ins. Co.*, No. 14-cv-01906-MSK-NYW, 2015 WL 7770772, at *2 (D. Colo. Dec. 3, 2015).

The court first addresses Plaintiff's argument that "[t]he timing of the amendment is almost irrelevant because it makes no functional difference for the progress of this case whether the amendment was made in July 2021 or October 2021." [Doc. 161 at 11]. Contrary to Plaintiff's assertion, the time at which a plaintiff moves to amend a complaint is highly relevant to this court's Rule 16(b) analysis, as the mere fact that a plaintiff learned of new information after the deadline to amend the pleadings is alone insufficient to establish good cause to amend the Scheduling Order. "A party does not demonstrate good cause to modify a scheduling order to accommodate an

---

of this court's discovery-dispute procedures, and the court declines to make any findings on discovery disputes that have either already been addressed by the court or have not been brought before the court pursuant to those procedures.

11

otherwise untimely motion to amend by simply pointing to information learned after that deadline. Rather, the party must also show it acted diligently in moving to amend once it learned of this new information." *Farr v. Jackson Nat'l Life Ins. Co.*, No. 19-4095-SAC-ADM, 2020 WL 5118068, at *1 (D. Kan. Aug. 31, 2020); *Gary G. v. United Healthcare*, No. 2:17-cv-00413-DN-DAO, 2021 WL 778578, at *1 (D. Utah Mar. 1, 2021*)* ("The moving party must show good cause for failing to move to amend prior to the cutoff date and for the length of time between learning of the new information warranting amendment and moving to amend.").

Indeed, "[e]ven when a party learns of new information through discovery, it must still act diligently in moving to amend." *Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 20-2298-JWB-ADM, 2021 WL 533827, at *4 (D. Kan. Feb. 12, 2021). For this reason, courts regularly look to when a party seeks leave to amend, in comparison to when it learned of new information necessitating the amendment, in determining whether good cause exists under Rule 16(b). *See, e.g.*, *Seale*, 2021 WL 927632, at *3-4; *Mackey v. Watson*, No. 17-cv-01341-CMA-STV, 2019 WL 3543624, at *10 (D. Colo. Aug. 5, 2019); *Grindle v. Cinetopia Prairifire, LLC*, No. 20-2092-KHV-KGG, 2021 WL 101126, at *2 (D. Kan. Jan. 12, 2021); *Riley v. Unified Caring Ass'n*, No. 13-cv-173-J, 2014 WL 12629944, at *5 (D. Wyo. Nov. 12, 2014). The court thus respectfully disagrees that the timing of the Motion to Amend irrelevant in its Rule 16(b) analysis, and will consider the timing of the Motion to Amend in determining whether Plaintiff has established good cause to amend the Scheduling Order under Rule 16.

By Plaintiff's own admission, Plaintiff discovered the information on which it bases its proposed amendments throughout the summer of 2021. More specifically, on approximately May

10, 2021,[9] it received "extensive" documents from the CDOC pursuant to its subpoena request. *See* [Doc. 131 at ¶ 11; Doc. 131-3 at 1]. Then, on June 14 and 15, 2021 it learned during the CDOC's deposition that Drs. Frost and Lish were Chief Medical Officers at the relevant times set forth in the Complaint, so as to demonstrate that these individuals may be subject to liability. *See* [Doc. 131 at ¶¶ 12-13]. On July 13, 2021, Plaintiff deposed Defendant Samuels, which Plaintiff represents provided evidence which demonstrates a potential basis for a negligence claim against Defendant Samuels. *See* [Doc. 161 at 10-11]. On July 15, 2021, *see* [Doc. 131 at ¶¶ 20-23]; [Doc. 121], Defendants produced documents identifying Ms. Cullyford as Defendant Samuels's supervisor, [Doc. 131 at ¶¶ 20-23], which the court assumes is the basis for Plaintiff's proposed supervisory liability claim against Ms. Cullyford. [Doc. 131-2 at 69]. And finally, in June, July, and August 2021, Plaintiff deposed Defendants and other individuals, *see* [Doc. 131 at ¶ 14], which Plaintiff states revealed "that the [CDOC's] health care system is completely dysfunctional and suffers from gross deficiencies in policies, procedures, staffing, and training." [*Id.* at ¶ 15]. Indeed, in considering the specific proposed amendments proposed by Plaintiff, *see* [Doc. 131-2], it is not immediately clear to this court which of the newly proposed factual averments are derived from discovery that was not available by August 2021, or somehow required the expert to synthesize to be able to conclude that systemic supervisory problems existed within the DOC system – a theory that seem to be interwoven in Plaintiff's claims since the inception of this action. *See e.g.* [Doc. 1 at ¶ 136; Doc. 80 at 7-9].

---

[9] The Motion to Amend does not provide the date on which the CDOC responded to Plaintiff's subpoena, which was served on April 27, 2021. [Doc. 131 at ¶ 11]. However, the subpoena is attached to Plaintiff's Motion and reflects a May 10, 2021 return date. [Doc. 131-3 at 1]. Accordingly, the court can only assume that Plaintiff received the responsive documents on or around May 10, 2021.

Yet Plaintiff did not seek leave to amend its Complaint until October 25, 2021—at least two months, and as much as five months, after the discovery of this new information. *See* [Doc. 131]. Plaintiff does not provide any reason for this delay in its Motion to Amend. *See generally* [*id.*]. For the following reasons, the court finds that Plaintiff has failed to adequately explain this months-long delay, and has thus not met its burden of establishing good cause to amend the Scheduling Order under Rule 12(b)(6).

First, the court is not persuaded by Plaintiff's apparent argument that it needed to wait to amend its Complaint until it itself was satisfied of the completeness of the factual record. *See* [Doc. 161 at 10]. Plaintiff argues that the CDOC Rule 30(b)(6) depositions in June 2021 were "the first piece in building supervisory liability claims" and "only provided Plaintiff with the foundation for further depositions," *see* [Doc. 161 at 7-8], but that, "at the end of August, all the dots had been connected to provide a complete picture of the facts." [*Id.* at 9]. As an initial matter, Plaintiff does not raise this argument in its Motion and the argument is thus waived. *See Harrell*, 642 F.3d at 918; *see also Fischer v. Adams Cty. Sch. Dist. No. 12*, No. 05-cv-01621-REB, 2006 WL 407820, at *2 n. 1 (D. Colo. Feb. 16, 2006) ("It is improper for a party to reserve its best case, even if ostensibly raised in response to its opponent's arguments, for its reply, when the opponent has no ready means of responding.").

Regardless, the relevant question before the court is not when Plaintiff fully understood the "complete picture of the facts," [Doc. 161 at 9], nor "whether there was definitive, bullet-proof support for any Motion to Amend." *Flexfunds ETP, LLC v. MarkETP, LLC*, No. 16-24504-CV, 2017 WL 4882530, at *3 (S.D. Fla. Oct. 30, 2017). Rather, the key inquiry is whether Plaintiff acted with diligence with respect to when it first learned of the relevant information and when it moved to amend. *Cf. Fountain Valley*, 2015 WL 7770772, at *2 (where the plaintiff learned of

information but "did not realize [its] significance" until discovery had progressed further, finding no good cause because the relevant question was "when the Plaintiff first learned of new information that it sought to include in its pleadings."); *cf. Ward v. Acuity*, No. 21-cv-00765-CMA-NYW, 2021 WL 4947294, at *4 (D. Colo. Oct. 6, 2021), *report and recommendation adopted*, 2021 WL 5113580 (D. Colo. Nov. 3, 2021) (finding no good cause for delay in amendment where the plaintiff did not initially realize the relevance of certain information it had in its possession). Where the deadline for amendment has already passed, it is "incumbent upon the Plaintiff to alert the court of its need to amend *as soon as possible* after learning the new information." *Fountain Valley*, 2015 WL 7770772, at *2 (emphasis added). Because several months passed between the discovery of much of the purportedly new information and the filing of the Motion to Amend, and because Plaintiff has not provided an adequate justification for that delay, the court cannot conclude that Plaintiff "acted diligently in moving to amend once it learned of this new information." *Farr*, 2020 WL 5118068, at *1.

Moreover, even assuming that it was permissible for Plaintiff to wait until it had acquired complete factual information before moving to amend, Plaintiff does not explain why it waited until two months after "all the dots had been connected" before seeking leave of court. Given the then-upcoming case deadlines, *see* [Doc. 120 at 1-2 (re-setting case deadlines, including re-setting the discovery deadline to December 13, 2021)], and this court's admonition that no further extensions of the discovery deadlines would be granted absent extraordinary circumstances, *see* [*id.* at 1], the court does not find that the two-month delay in filing the Motion demonstrates diligence on the part of Plaintiff. *See Romero v. Allstate Fire & Cas. Ins. Co.*, No. 14-cv-01522-NYW, 2015 WL 5321441, at *7 (D. Colo. Sept. 14, 2015) (finding no good cause where the plaintiff waited two months in seeking leave to amend and did not explain the delay); *Schneider*

15

*v. Citimortgage, Inc.*, No. 13-4094-SAC, 2016 WL 344725, at *4 (D. Kan. Jan. 28, 2016) (finding no good cause where movant failed to explain two-month delay between learning of information and moving to amend).

Insofar as Plaintiff represents in its Reply that the "time it took to get an amended complaint was not due to undue delay, but rather the extraordinary time and effort it took to obtain the necessary information" because [o]ver 400 hours of Plaintiff's counsel's time went into discovery" and "[r]esearch and reviewing documents for the amended complaint and drafting it alone took approximately 29 hours so it could finally be filed on October 25, 2021," [Doc. 161 at 10], the court respectfully finds that general references to the time spent on discovery throughout this entire litigation do not explain the delay between the discovery of information and the filing of the instant Motion to Amend. While the court does not discount the significant time required for Plaintiff to prepare the Motion to Amend and proposed Amended Complaint, and notes that the Parties have been engaged in various discovery disputes, the mere fact that the preparation of the Motion was time-consuming does not provide adequate justification for the delay. *Cf. C. R. Bard, Inc. v. Med. Components, Inc.*, No. 2:17-cv-00754-HCN-DAO, 2020 WL 10057891, at *6 (D. Utah Aug. 7, 2020) ("[A]ctive litigation is not in itself a justification for a delay in moving to amend. This is particularly true where the deadline to amend passed nearly two years before the motion for leave to amend was filed and all the exhibits supporting the amendment were in [the movant's] possession for many months at the time it filed its motion.").

Indeed, Plaintiff acknowledged in September 2020 and in May 2021 that this is a "factually complex case involving the decedent's care at [CDOC] over the course of a year and a half and involving dozens of providers both at [CDOC] and outside [CDOC]." *See* [Doc. 61 at ¶ 2; Doc. 108 at ¶ 2]. Thus, without specific examples of information that were difficult to extract from the

discovery process, the court does not find that the time required to prepare the Motion to Amend presents unique or unexpected circumstances that would explain the delay in filing. *Cf. EEOC v. JBS USA, LLC*, No. 10-cv-02103-PAB-KLM, 2016 WL 1039907, at *6 (D. Colo. Mar. 16, 2016) (rejecting argument that time-consuming discovery process excused untimely expert disclosures because while the case "present[ed] unique challenges, such challenges were apparent, or should have been, at the outset of this case," and yet the movant "did not seek relief earlier to account for these challenges or ask the Court earlier to modify or extend the [disclosure] deadline").

Finally, it does not appear that the expert report on September 16, 2021 impacted Plaintiff's ability to seek amendment. As set forth above, Plaintiff concedes that it had a "complete" view of the facts as of the end of August 2021. [Doc. 161 at 9]. Plaintiff does not explain why it needed an expert report to move to amend its Complaint, nor does Plaintiff cite to any portion of the proposed Amended Complaint which it asserts is based on the expert report. *See generally* [Doc. 131];[10] *see also* [Doc. 161 at 11 (stating that "Plaintiff's expert produced a report on . . . September 16, 2021 that served as the basis for Plaintiff's Amended Complaint" but not explaining why the expert report was necessary for amendment or which new allegations are predicated on the expert report)]. "[A] complaint need not 'make a case' against a defendant or 'forecast evidence sufficient to prove an element' of the claim. It need only 'allege facts sufficient to state elements' of the claim." *Janes v. LeaderOne Fin. Corp.*, No. 11-2458-EFM, 2011 WL 6000838, at *1 (D. Kan. Nov. 30, 2011). Absent any argument from Plaintiff otherwise, the court is not convinced that the expert report was required for Plaintiff to sufficiently state its claims.

In sum, based on the record before the court, Plaintiff has failed to establish that good cause

---

[10] Plaintiff did not attach the expert report to its Motion to Amend nor cite to the report in the Motion. *See generally* [Doc. 131].

17

exists under Rule 16(b) to amend the Scheduling Order.  Having found no good cause under Rule 16(b), the court need not address the Rule 15 standards for leave to amend.  *See Gorsuch*, 771 F.3d at 1242 ("Having concluded [the movants] lacked good cause to amend their pleadings after the scheduling order deadline, we need not reach the Rule 15(a) issue, and decline to do so."); *Colo. Visionary Acad.*, 194 F.R.D. at 688 (denying motion to amend on the basis of a failure to establish "good cause" under Rule 16(b)(4)); *Perez v. Denver Fire Dep't*, 243 F. Supp. 3d 1186, 1199 (D. Colo. 2017), *aff'd*, 724 F. App'x 646 (10th Cir. 2018) (unpublished) ("[T]he application of Rule 16(b)'s good-cause standard is not optional.") (quotation omitted).

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1)    Plaintiff's Motion to Amend Complaint [Doc. 131] is **DENIED**.

DATED:  January 21, 2022                             BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge